408 Pa. Superior Ct. 54 (1991)
596 A.2d 188
THERMO-GUARD, INC., Appellant,
v.
Timothy O. COCHRAN, Anthony C. Muscarelli, Robert R. Sollberger, George A. Krinock and Pennsylvania Insulation Company.
THERMO-GUARD, INC., Appellant.
v.
Coy L. THOMAS, Jr.
Superior Court of Pennsylvania.
Argued January 23, 1991.
Filed August 19, 1991.
*56 William C.A. Boyle, York, for appellant.
Audrey E. Woloshin, Gettysburg, for appellees.
Before OLSZEWSKI, BECK and TAMILIA, JJ.
BECK, Judge:
These are consolidated appeals from orders granting in part and denying in part appellant Thermo-Guard, Inc.'s Petition for a Preliminary Injunction. The pertinent factual background and procedural history giving rise to these appeals is as follows.
The first appeal arises out of an action in equity brought by appellant Thermo-Guard, Inc., a corporation engaged in the business of selling and installing insulated replacement *57 windows in central Pennsylvania, against appellees Timothy Cochran, Anthony Muscarelli, Robert Sollberger, George A. Krinock and Pennsylvania Insulation Company.[1] The individual appellees were all employed by Thermo-Guard as sales representatives for one to two years in the period from mid-1986 through late 1989. Appellee Pennsylvania Insulation Company is also in the business of selling replacement insulated windows in York County, is in competition with Thermo-Guard in that market and is the present employer of all the individual employees.
At the commencement of each of the individual appellees' employment at Thermo-Guard, they signed a Salesperson's Agreement providing, in part:
Recognizing that with the beginning of my employment I will avail myself to and continue with the Company's special training program for my learning and development of the special skills and product knowledge that are needed for me to productively engage in the Company's unique specialty sales business; that I will be privy to Company unique and confidential information in marketing, systems, sales development, as well as being furnished with Company owned repeat customer and prospective customer lists, and in consideration thereof, I agree that upon the termination of this contract and my disassociation from the Company, I will not for a period of one (1) year, and within a sixty (60) mile radius of the Company Branch Office in which I have worked, enter into competition with the Company, either as an individual on my sole account or in association with others, or as an employee, associate, agent, contractor, agent, partner, limited partner, general partner, founder, board member, officer, stockholder, manager or consultant, of another person, firm, organization, proprietorship, partnership or corporation, or otherwise in any other manner whatsoever...
*58 Shortly after appellees left Thermo-Guard's employ, they all began to work for appellee Pennsylvania Insulation Company.
On April 27, 1989, Thermo-Guard filed a Complaint in Equity accompanied by a Petition for Preliminary Injunction against appellees Cochran, Muscarelli, Sollberger, Krinock and Pennsylvania Insulation Company. As to Cochran, Muscarelli and Sollberger, Thermo-Guard alleged a breach of the above-quoted restrictive covenant. As to Krinock and Pennsylvania Insulation, Thermo-Guard alleged tortious interference with contractual relationships, contending that these appellees were luring away Thermo-Guard salespersons. A hearing was conducted on May 12, 1989. On May 25, 1989, the trial court entered a decree nisi prohibiting Cochran, Muscarelli and Sollberger from communicating with any purchasers or prospective purchasers of Thermo-Guard products who became known to appellees during their employment with Thermo-Guard. The court refused to enjoin appellees from working for Pennsylvania Insulation and found no basis for Thermo-Guard's claim that Pennsylvania Insulation and Krinock were interfering with Thermo-Guard's contractual relationships.
After timely exceptions were filed and denied, the trial court entered its decree nisi as a final decree on February 14, 1990.[2] The final decree was thereafter *59 amended to include a finding by the trial court that the matter involved a controlling question of law as to which there was a substantial ground for difference of opinion and that an immediate appeal would advance the termination of the litigation. Appellant then petitioned this court for permission to appeal under Pa.R.A.P. 1311. By per curiam order dated July 13, 1990, this court stated that it would consider the petition for permission to appeal as a notice of appeal from the trial court's final decree.
The second appeal arises from an action in equity filed by Thermo-Guard, Inc. against another of its former sales representatives, Coy L. Thomas.[3] The complaint in this action was filed on November 10, 1989 and was also accompanied by a petition for preliminary injunction. The allegations were substantially similar to those contained in the complaint filed in the Cochran action, namely that appellee Thomas had signed a restrictive covenant[4] and had violated it by becoming employed by Pennsylvania Insulation immediately upon terminating his employment with Thermo-Guard.
Because of the similarity in the facts of the two actions, the trial court determined that it could rely on the testimony offered in the Cochran action in reaching a decision in the Thomas action. Thus, on February 16, 1990, the court entered an order in which it incorporated the findings of fact and conclusions of law from the Cochran action. The *60 court also entered a decree nisi identical to the Cochran decree nisi prohibiting Thomas from communicating with or developing a relationship with any customers of Thermo-Guard with whom Thomas became acquainted while employed by Thermo-Guard.
Thomas' timely exceptions to the decree nisi were denied and a final decree was entered on August 9, 1990.[5] Thomas then sought permission to appeal from this court, which granted permission to appeal by per curiam order dated November 26, 1990.
The appeals from the final decrees in the Cochran and Thomas action were consolidated by this court. Since, as the trial court found, the facts and issues raised in the two appeals are substantially identical, we will dispose of the merits of both appeals in one consolidated discussion. First, however, we must turn to the interesting procedural question raised by the manner in which these appeals were taken.
As the foregoing recitation reveals, both of these appeals were initiated by filing petitions for permission to appeal, and not by filing notices of appeal. However, both the Rules of Appellate Procedure and statutory law clearly provide that appeals by permission are taken only from interlocutory orders which are not otherwise immediately appealable as of right. See 42 Pa.C.S.A. § 702(b); Pa. R.A.P. 1311. Use of this procedure in these cases was clearly inappropriate because both of the orders appealed from are final decrees in equity which are final orders appealable as of right.[6]
*61 It is perhaps because of this procedural anomaly, i.e. a petition for permission to appeal from a final appealable order, that in the Cochran case this court did not outright grant permission to appeal. Rather, we ordered that the petition for permission to appeal would be "treated as a notice of appeal." In this manner, the court avoided granting an improperly filed petition for permission to appeal from an already appealable final order.[7]
The more appropriate approach to this kind of procedural misstep would be denial of permission to appeal. Permission to appeal may not be granted where the order appealed from is already appealable as of right. Nothing in the statute or rules governing appeals by permission refers to such appeals as an alternative method of appealing an order as of right. Rather, Pennsylvania Rule of Appellate Procedure 902 provides that an appeal as of right, which includes appeals from final orders, "shall be taken by filing a notice of appeal with the clerk of the lower court within the time allowed by Rule 903 (time for appeal)." (emphasis added). The rule provides of no exceptions. In fact, the rule emphasizes that the filing of a timely notice of appeal is the sine qua non of a proper appeal from a final order by stating that "[f]ailure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal...." This clearly implies that the only failure that does affect the validity of the appeal is the failure to file a timely notice of appeal. It is this failure that we have no jurisdiction to excuse.
Nor is there anything in the rules that suggests that an improperly filed petition for permission to appeal should or may be treated as a notice of appeal. Unlike Chapter 11 of the Rules of Appellate Procedure, which specifically allow *62 improvident petitions for allowance of appeal to the Supreme Court to be treated as notices of appeal, the rules regarding appeals to this court contain no such provisions.
We find further support for this view in the case of Mash v. Old Home Manor, Inc., 298 Pa.Super. 7, 444 A.2d 147 (1982). In Mash, petitioners sought this court's review of an order changing the venue of their action. Petitioners filed a Petition for Review to initiate proceedings in this court. This court quashed the petition, finding that the order on appeal was an interlocutory order appealable as of right under Pa.R.A.P. 311(c). Since the order was appealable as of right, this court held:
This appeal should have been brought pursuant to Rule 311 [i.e. by filing a notice of appeal].
. . . .
Chapter 9 of the Rules applies to all appeals except those specifically excluded by Rule 901. Appeals pursuant to Rule 311 are not excluded. Therefore, since this appeal is one covered by Chapter 9 of the Rules, Chapter 15 does not apply. We would add that if we were to recognize this as a Chapter 15 proceeding, then any order of a lower court could be so heard, resulting in a circumvention of the prescribed appellate procedure.
Id., 298 Pa.Superior Ct. at 10, 444 A.2d at 149.
We agree with the Mash court's conclusion and find that its reasoning applies with equal force here. Appeals from final decrees in equity, which are the types of orders on appeal here, are not excluded from the operation of Chapter 9 of the rules. Rather, it is appeals from such final orders that Chapter 9 primarily addresses. Although appeals by permission under Chapter 13 are excluded from Chapter 9, as we have indicated, these cases do not involve proper appeals under Chapter 13, which applies only to appeals from interlocutory orders.
We are also in accord with the Mash court's concern that if such an aberrational procedure for appeal were to be allowed, we would circumvent established appellate procedures. *63 This court cannot treat improperly filed petitions for permission to appeal as if they were properly filed notices of appeal without creating havoc in normal procedures attendant upon the filing of a notice of appeal. See Pa.R.A.P. 901-08. Furthermore, we note that to treat an improper petition for permission to appeal as a notice of appeal may result in relieving the petitioning party from the normal time constraints for appeals from final orders, which this court has no jurisdiction to vary. See Pa.R.A.P. 902, supra.
Thus, we are constrained to conclude that in future, where a petition for permission to appeal seeking review of a final order, appealable as of right, or of an interlocutory order made appealable as of right under Pa. R.A.P. 311, is filed, this court should simply deny the petition. In any case where counsel is in doubt as to whether a petition for permission to appeal is appropriate, counsel may, in addition to the petition, also file a timely notice of appeal to make certain that the right to appeal is preserved.
Turning to the merits of these appeals, we find no error in either the trial court's analysis of the evidence presented or in its interpretation and application of the relevant law. In reaching this conclusion, we have remained mindful that we are reviewing the action of a chancellor in equity in determining the propriety of injunctive relief and that our standard of review in such a case is limited. We will reverse only where we can confidently conclude that the trial court was palpably erroneous, misapplied the law or committed a manifest abuse of discretion. Schaeffer v. Frey, 403 Pa.Super. 560, 589 A.2d 752 (1991). If there are any apparently reasonable grounds for the trial court's decision, we must affirm it. City of Philadelphia v. District Council 33, American Federation of State, County and Municipal Employees, 525 Pa. 468, 581 A.2d 916, 919 (1990). We also emphasize, as we did in Schaeffer, supra, that a preliminary injunction is an extraordinary remedy to be utilized only where the plaintiff has established *64 a clear right to relief. Schaeffer, 403 Pa.Super. at 565-566, 589 A.2d at 755.
The trial court concluded that Thermo-Guard established a clear right to an injunction against interference by its former employees with Thermo-Guard's existing or prospective customer relations. However, the court found that Thermo-Guard had not established a clear right to an injunction completely prohibiting its former employees from working for a competitor.[8] Thermo-Guard asserted that it had a right to such protection arising from the restrictive covenant quoted above and signed by each of these former employees. Thermo-Guard argued that this covenant was a binding and enforceable agreement not to compete, supported by consideration and reasonable in both temporal and geographic scope. The trial court disagreed, finding that the covenant was overbroad and that general injunctive relief against competition from these former employees was not appropriate because it was not necessary to protect a legitimate business interest of Thermo-Guard.
We agree with the trial court's conclusion and with its reasoning in support thereof. Although most cases dealing with the enforceability of restrictive covenants focus on whether the covenant provides reasonable temporal and geographic limits, there is an additional requirement for enforceability of such covenants. That is, such covenants must serve to protect a legitimate, i.e. a legally protectible, interest of the employer. The Supreme Court has expressed the requirements for enforceability of general restrictive covenants in the following manner:
Our courts will permit the equitable enforcement of post-employment restraints only where they are incident to an employment relation between the parties to the *65 covenant, the restrictions are reasonably necessary for the protection of the employer, and the restrictions are reasonably limited in duration and geographic extent.
Sidco Paper Co. v. Aaron, 465 Pa. 586, 591, 351 A.2d 250, (1976); See also Boldt Machinery & Tools, Inc. v. Wallace, 469 Pa. 504, 366 A.2d 902 (1976) (post-employment covenant must be designed to protect a legitimate business interest of employer) (opinion by Pomeroy, J.).
The requirement that the "restrictions [be] reasonably necessary for the protection of the employer" or, as otherwise stated, be designed to protect a legitimate business interest of the employer, is at issue here. Pennsylvania cases have recognized that trade secrets of an employer, customer goodwill and specialized training and skills acquired from the employer are all legitimate interests protectible through a general restrictive covenant. Morgan's Home Equipment Corp. v. Martucci, 390 Pa. 618, 136 A.2d 838 (1957). In addition, our case law has emphasized that in determining whether to enforce a post-employment restrictive covenant, we must balance the interest the employer seeks to protect against the important interest of the employee in being able to earn a living in his chosen profession. Id. Thus, post-employment restrictive covenants are subject to a more stringent test of reasonableness than such covenants ancillary to the sale of a business. Id.
In the instant case, the trial court protected Thermo-Guard's interest in customer goodwill generated by appellees by issuing an injunction prohibiting appellees from contacting or developing any relationship with any of Thermo-Guard's present customers or prospective customers who became known to appellees through their employment with Thermo-Guard. Once this interest was protected, the trial court could perceive no remaining legitimate business interest for Thermo-Guard to protect through a general injunction against competition by appellees.[9] We agree.
*66 Thermo-Guard argues that it should be permitted to enforce the general restrictive covenant because it has a legitimate business interest in protecting certain specialized marketing and sales techniques applicable to selling replacement windows which were developed by Thermo-Guard and conveyed to appellees during their employment. Although the protection of such specialized knowledge and training is a legitimate interest as to which a restrictive covenant may be enforced, we concur in the trial court's assessment of the evidence here, which revealed that no such specialized training or sales and marketing techniques were in fact conveyed to appellees during their employment at Thermo-Guard.
As the trial court found, the testimony revealed that Thermo-Guard marketed its replacement windows primarily through advertising in print media, on television and at exhibitions of building products. It also marketed its product through telephone solicitations. The persons to be solicited were taken from general telephone directories and the solicitations were made by a separate non-sales staff who were exclusively engaged in telephone solicitations. Sales representatives like appellees were forbidden from having any contact with the lists of people who expressed an interest in exploring the purchase of windows. Rather, the sales representatives were periodically given a short list of contacts, which they then followed up on through sales calls. Thus, there does not appear to have been any particular marketing strategy or information to which appellees were privy, since neither general advertisements nor "cold calls" to telephone numbers obtained from the directory can be characterized as specialized techniques. Moreover, as previously stated, those contacts of which appellees did become aware are adequately protected by the trial court's *67 limited injunction forbidding appellees from communicating with or having any relationship with prospective customers of Thermo-Guard.
Nor did appellees receive any sales training that could be considered materially different from that received by any salesman. The record reveals only a normal training period during which the sales representative is instructed as to how he might convince a home owner of the need to replace his or her windows.
Under these facts, we agree with the trial court that Thermo-Guard has no legitimate interest in protection from its former employees being employed by a competitor as long as those employees have no contact with any past, present or prospective customer of Thermo-Guard of whom the employee is aware because of his former employment at Thermo-Guard. The trial court struck a highly appropriate balance between the business interests of the employer and the right of these appellees to earn a living.
The orders of the trial court in these consolidated appeals are affirmed.
TAMILIA, J., files a concurring statement.
TAMILIA, Judge concurring:
While I concur in the result on the merits of this case, I would quash the appeal as the majority clearly points out that an appeal as of right may not be originated through the extraordinary procedure called for by the rules relating to permission to appeal.
NOTES
[1] For convenience of reference, we will hereinafter refer to this action as the "Cochran action."
[2] Although none of the parties in either the Cochran action or the Thomas action have raised this point, we are compelled to comment on the procedure followed by the trial court in entering a final decree after the hearing on the preliminary injunction request. Ordinarily, a court should not convert a hearing on a preliminary injunction into a final adjudication of the merits of the underlying equity action and then proceed immediately to hear exceptions and enter a final decree. Drum v. Dinkelacker, 262 Pa. 392, 105 A. 509 (1918); Township of Clinton v. Carmat, Inc., 288 Pa.Super. 433, 432 A.2d 238, 239 (1981). Of course, the parties may consent to treating the preliminary injunction proceedings as proceedings leading to the entry of the final decree and the court is then free to proceed to final adjudication without further hearings. Drum, supra; Carmat, supra.

As we have stated, in these cases neither party has lodged a complaint about the procedure followed by the trial court. Therefore, we presume they had no objection to this procedure. Nevertheless, we caution that lacking consent by the parties, the preliminary injunction proceedings are to be treated as separate from and a precursor to final adjudication.
[3] For convenience of reference, we will hereinafter refer to this action as the "Thomas action".
[4] The precise phraseology of the covenant signed by Thomas was somewhat different from that signed by the appellees in the Cochran action. However, the differences in phraseology are not legally material in that the Thomas covenant equally precludes any competition by Thomas with Thermo-Guard in the replacement window business for one year following termination. The geographic area specified is the area within a 100-mile radius of the York office of Thermo-Guard. The Thomas covenant also prohibits disclosure of confidential business information within the same temporal and geographic limits.
[5] See footnote 2, supra.
[6] Even if the trial court had never entered final decrees in these cases and had instead simply entered orders disposing of Thermo-Guard's petitions for preliminary injunctions, those orders would nevertheless have been immediately appealable as of right under the authority of Pennsylvania Rule of Appellate Procedure 311(a)(4). This rule allows immediate appeals as of right from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions...." Thus, even without the final decrees that are present in this record, appellant here had a right to appeal and seeking permission to do so was unnecessary and inappropriate.
[7] There is nothing in the record that would explain why this court did not follow a similar procedure in the Thomas case. There, this court granted the petition for permission to appeal despite the fact that it inappropriately sought permission to appeal from a final appealable order.
[8] The court also refused to enter an injunction against George Krinock and Pennsylvania Insulation to prevent them from soliciting Thermo-Guard's sales representatives to come to work at Pennsylvania Insulation. There was no evidence to support Thermo-Guard's allegation that these parties were interfering with its contractual relations with its employees or had contacted any of the individual appellees to attempt to lure them away from Thermo-Guard.
[9] It is beyond question that the trial court had the power to grant only partial enforcement of the restrictive covenant. Pennsylvania courts have long held that where a restrictive covenant is found to be overbroad and yet the employer is clearly entitled to some measure of protection from the acts of his former employee, the court may grant such protection by reforming the restrictive covenant and enforcing it as reformed. See Sidco Paper Co. v. Aaron, 465 Pa. 586, 594-95, 351 A.2d 250, 254-55 (1976); Jacobson & Co. v. International Environment Corp., 427 Pa. 439, 235 A.2d 612 (1967).