W. Lawrence HESS, Appellant,

v.

GEBHARD & CO. INC., and Eugene Hoaster Company, Inc., Appellees.

W. Lawrence Hess, Appellee,

v.

Gebhard & Co. Inc., and Eugene Hoaster Company, Inc., Appellants.

Superior Court of Pennsylvania.

Argued Oct. 17, 2000.

Filed March 2, 2001.

David J. Brightbill, Lebanon, for Hess.

John J. Ferry, Lebanon, for Gebhard & Co.

Before POPOVICH, FORD ELLIOTT and BROSKY, JJ.

POPOVICH, J.:

¶ 1 These cross-appeals arose from the final decree entered on June 23, 2000, in the Court of Common Pleas, Lebanon County. For the following reasons, we affirm.

¶ 2 On April 29, 1974, W. Lawrence Hess ("Hess") commenced employment as an insurance agent with Eugene Hoaster Co., Inc. ("Hoaster"). Hoaster's business consisted primarily of insurance and real estate sales. As part of his employment, Hess executed an employment agreement whereby he covenanted not to compete with Hoaster within a twenty-five mile radius of the City of Lebanon for a period of five years after the termination of his employment. Hess worked for Hoaster until December 31, 1996.

¶ 3 In July of 1996, Hoaster entered into a sales agreement with Gebhard & Co.,

Inc. ("Gebhard"). Hoaster agreed to sell the insurance portion of its business to Gebhard. Hoaster then would continue to conduct its real estate operation. However, as of August 27, 1999,[1] Hoaster still received remuneration from the sale of its insurance operations, including payment on several new accounts, as the structure of the sale was dependent upon the maintenance of its existing client base. The final settlement date for the sale was January 1, 1997. As part of the sale, Hoaster assigned to Gebhard all of its then existing contracts and agreements, including Hess' employment agreement containing the covenant not to compete.

¶ 4 In July of 1996, Hess was notified of the sale of Hoaster and that his employment would cease on December 31, 1996. In the months preceding the sale, Hess met with Gebhard on three separate occasions to discuss the possibility of employment effective January 1, 1997. Gebhard informed Hess that his current position would be eliminated after the sale. However, Gebhard presented two positions for Hess' consideration. Hess did not feel that he was qualified for either position, and, in December 1996, he expressed his disinterest in the offered positions. Gebhard provided Hess with a letter of recommendation and an $11,000.00 life insurance policy. Hess' employment terminated on December 31, 1996, but before he left, he was reminded of the existing employment agreement.

¶ 5 In November of 1996, unbeknownst to Hoaster and Gebhard, Hess began employment negotiations with Bowman's Insurance Agency, a competing business in Lebanon County. In early January of 1997, Hess and Bowman's were in final employment contact negotiations. On January 5, 1997, less than one week after leaving Hoaster, Hess used information that he acquired in Hoaster's employ and solicited the County of Lebanon, one of Hoaster's major clients, as a new client for Bowman's Insurance Agency. Gebhard and Hoaster learned of this and then wrote Hess a letter, a copy of which was sent to Bowman's Insurance Agency, reminding him of the covenant not to compete and threatening a legal action if Hess refused to comply. As a result of the letter, Bowman's decided against hiring Hess.

¶ 6 Hess filed suit shortly thereafter against Hoaster and Gebhard. Hess filed claims in law and equity alleging intentional interference with prospective contractual relations; asking the court to enjoin Hoaster and Gebhard from contacting Hess' prospective employers; asking to void the enforceability of the employment agreement; asking to void the covenant not to compete; and asking for monetary damages for intentional interference with prospective contractual relations. *See* Amended Complaint, 3/9/98.

¶ 7 Hoaster and Gebhard filed preliminary objections to the complaint. The lower court sustained their objections in part and dismissed those claims which alleged the intentional interference with prospective contractual relations and damages therefrom because the court found that Hoaster and Gebhard were asserting their rights under the covenant not to compete when they sent the letter to Hess and Bowman's Insurance Agency. *See* Trial Court Order & Opinion, 5/19/98, at 3–5.

¶ 8 The lower court then held a hearing on the equitable claims regarding the reasonableness of the covenant's terms. The lower court rejected Hess' contention that the covenant was void because of the assignment from Hoaster to Gebhard but found the covenant to be unreasonable as

1. August 1, 1999, was the date of the trial court's final hearing.

to both duration and geographic extent. *See* Trial Court Order & Opinion, 2/9/99, at 5–6. The lower court modified the covenant to prohibit Hess for a period of two years from contacting those insurance customers of Hoaster and Gebhard within Lebanon County who existed on the date of the assignment of the covenant. *See* Trial Court Order & Opinion, 2/9/99. Hess was permitted to work for competing insurance firms during this two-year period as long as he did not contact the previously-mentioned customers within that two-year period. *See id.*

¶ 9 Hess re-listed the matter for a hearing on damages. The lower court found that damages were unwarranted and entered judgment in favor of Hoaster and Gebhard with Appellant to pay costs of suit. *See* Trial Court Order & Opinion, 12/19/99, at 7. Hess filed a motion for post-trial relief that the lower court subsequently denied. *See* Trial Court Order & Opinion, 4/26/2000. The lower court then entered a final decree in the matter. *See* Praecipe, 6/23/2000 (decree entered as per praecipe filed).

¶ 10 Hess timely filed an appeal. Additionally, Hoaster and Gebhard timely filed a cross-appeal.

¶ 11 Hess presents the following questions for our review:

1. Whether the lower court erred in finding that the assignment of Hess' employment contract was valid.
2. Whether the lower court erred in finding that the enforcement of Hess' employment contract was reasonable.
3. Whether the lower court erred in sustaining the preliminary objections for failure to set forth a cause of action to Hess' claim of intentional interference with prospective contractual relations.
4. Whether Hess is entitled to attorneys' fees for defending Hoaster's and Gebhard's counter-claim for attorneys' fees.

Appellant's Brief, at 2–5.[2]

¶ 12 In their cross-appeal, Hoaster and Gebhard allege that the lower court erred in failing to award them attorneys' fees and request that the case be remanded for a hearing on their counterclaim for attorneys' fees. *See* Appellees' Brief, at 1.

¶ 13 Hess' first contention is that the lower court erred in finding that Hoaster's assignment of the covenant not to compete to Gebhard was valid. Specifically, Hess contends that the assignment of the covenant not to compete was invalid because Hess did not consent to the assignment as required by *All–Pak, Inc. v. Johnston*, 694 A.2d 347 (Pa.Super.1997).

¶ 14 In *All–Pak, Inc.*, Johnston was hired by All–Pak to be a sales representative. At the time he began his employment with All–Pak, Johnston entered an employment contract, which contained non-disclosure and restrictive covenant provisions. All–Pak entered into an asset sale agreement with Total–Pak, Inc., which included all of All–Pak's assets, including its name. Thereafter, Total–Pak changed its name to All–Pak. Johnston continued working for the new All–Pak until his employment was terminated. Several months later, Johnston began working for a competitor. The new All–Pak filed suit against Johnston seeking an injunction to

---

2. We note that Hess' statement of questions involved violates Pa.R.A.P. 2116(a) in that such statements ordinarily should not exceed fifteen lines and never exceed one page. Hess' statement of questions is eighty-three full or partial lines and totals over three pages in length. Therefore, we have compiled Hess' fifteen questions involved for our editorial convenience.

prevent Johnston from working for a competitor. We stated:

> Strong policy considerations underlie the conclusion that restrictive covenants are not assignable. Given that restrictive covenants have been held to impose a restraint on an employee's right to earn a livelihood, they should be construed narrowly; and, absent an explicit assignability provision, courts should be hesitant to read one into the contract. Moreover, the employer, as drafter of the employment contract, is already in the best position to include an assignment clause within the terms of the employment contract. Similarly, a successor employer is free to negotiate new employment contracts with the employees [ . . . ].

In this case, the trial court found that the employment contract between the original All–Pak and Johnston did not contain an assignment clause, and that the records as it existed did not show that Johnston consented to the purported assignment between original All–Pak and the new All–Pak. Thus, a fuller record was required. Given the state of the record at this preliminary stage in the proceedings, the trial court acted properly in finding that appellant's right to injunctive relief was not clear, and hence the court had a reasonable basis for denying appellant's petition for a preliminary injunction.

*All–Pak, Inc.,* 694 A.2d at 351 (citations omitted).

¶ 15 Hess argues that *All–Pak, Inc.* controls in the present case. Hess did not consent to the assignment of the covenant not to compete within the employment contract, and the employment contract did not include an assignment clause. Therefore, Hess argues that the assignment was invalid. However, the lower court distinguished *All–Pak, Inc.* and found that covenant on its face survived assignment. We agree.

¶ 16 The lower court held that the assignment of the insurance portion of the business did not destroy the covenant not to compete because Hoaster continued to be involved in the business. Charles Brooks, the owner of Hoaster, testified that he continued to be involved in the insurance portion now owned by Gebhard. Hoaster continued to receive compensation from Gebhard on the proceeds from Hoaster's client base sold to Gebhard. Hess, after he gained new employment with Bowman's Insurance Agency, contacted a client of Gebhard who was formerly a client of Hoaster and attempted to procure the client's business. Because Gebhard's client was a former client of Hoaster, Hoaster would lose compensation from Gebhard if the client went with Bowman's Insurance Agency. Therefore, we find that, unlike the original employer in *All–Pak, Inc.,* Hoaster, who was the original employer in the present covenant, had a continuing interest via Gebhard in enforcing the covenant not to compete.

¶ 17 This leads our analysis to Hess' second contention that the lower court erred in finding that the enforcement of the covenant not to compete was reasonable.

In Pennsylvania restrictive covenants are enforceable if they are incident to an employment relationship between the parties, the restrictions imposed by the covenant are reasonably necessary for the protection of the employer, and the restrictions imposed are reasonably limited in duration and geographic extent. *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 136 A.2d 838 (1957); *John G. Bryant Co. v. Sling Testing & Repair, Inc.,* 471 Pa. 1, 369 A.2d 1164 (1977). However, when fashioning an injunction to enforce a restric-

tive covenant, trial courts have broad powers to modify the restrictions imposed on the former employee to include only those restrictions reasonably necessary to protect the employer. *Morgan's Home Equipment Corp., supra.* This is so because restrictive covenants constitute a restraint on the employee's trade, and are strictly construed against the employer. *See Jacobson & Co. v. International Environment Corp.,* 427 Pa. 439, 235 A.2d 612 (1967). As a result, in determining whether to enforce a post-employment restrictive covenant, we must balance the interest the employer seeks to protect against the important interest of the employee in being able to earn a living in his chosen profession. *Thermo–Guard, Inc. v. Cochran,* 408 Pa.Super. 54, 596 A.2d 188 (1991).

*All–Pak, Inc.,* 694 A.2d at 350–51.

¶ 18 Hess contends that enforcement of the covenant not to compete was unreasonable because he was terminated from Gebhard's employ through no fault of his own.

¶ 19 We have drawn a significant factual distinction between the hardship imposed by the enforcement of a restrictive covenant on an employee who voluntarily leaves his employer and on an employee who is terminated. *See Insulation Corp. of America v. Brobston,* 446 Pa.Super. 520, 667 A.2d 729 (1995). In *Insulation Corp. of America,* we stated that the employer who fires an employee for failing to promote the employer's business deems the employee worthless. We then held that under such circumstances, it is unreasonable to permit the employer to retain unfettered control via the non-competition prohibition over an employee it has deemed worthless. However, we must

keep in mind that reasonableness is determined on a case-by-case basis. *See Jacobson & Co.,* at 439, 235 A.2d at 612.

¶ 20 However, the facts of the present case regarding Hess' termination are significantly different than the termination of the employee in *Insulation Corp. of America.* The employee in *Insulation Corp. of America* was fired and was "effectively discarded as worthless to [his employer's] legitimate business interest." In the present case, Hess was a valued employee. He was employed as a "servicer" of insurance accounts.[3] All parties agree that Hess was not an insurance salesman. When Gebhard purchased the insurance portion of Hoaster, Gebhard notified Hess that two positions were available but neither position was as a servicer. Hess felt he was not qualified for either position and declined employment with Gebhard. Prior to Hess' termination, Gebhard penned a letter of recommendation for Hess to use to gain new employment. Hess then attempted to gain employment at Bowman's Insurance Agency. During negotiations with Bowman's Insurance Agency, Hess attempted to produce new business for Bowman's Insurance Agency when he contacted a client of Gebhard.

¶ 21 We agree with the lower court that Hess, who on his own felt that he was not qualified for the positions available, was not a worthless employee in the eyes of Gebhard. However, the lower court modified the restrictions on the covenant not to compete to make it reasonable to both Hess and Hoaster and Gebhard.

¶ 22 The covenant not to compete clause provided in part, that the Agent agrees:

...upon the termination of this Agreement, not to engage in the same or similar business as that now carried on

---

**3.** A servicer is an agent that services existing insurance contracts as opposed to a producer who is an agent that sells contracts to new clients.

by the Agency, nor work for an individual or firm engaged in such line or similar line of business within a radius of twenty-five (25) miles of the City of Lebanon, for a period of five (5) years from the date of termination of this Agreement. In the event that any court of competent jurisdiction determines this covenant to be unreasonable either in extent of distance or time, it shall be considered modified so as to cover the maximum extent of time and distance which such court shall find permissible under the circumstances.

Agent's Agreement, at 2.

■ ¶ 23 The lower court found having a covenant not to compete was reasonable. However, the lower court found that the duration was too long and the scope was too broad. The lower court modified the covenant to the following:

[Hess] shall be prohibited for a period of two (2) years from contacting insurance customers who were in existence on the date of the assignment of the covenant not to compete.

Trial Court Order, 2/9/99, at 1. The lower court did not prohibit Hess from working in a competing firm within the twenty-five mile radius of the City of Lebanon.

¶ 24 We find that this modification was reasonable when considering the facts of this case. The lower court's modification prevented Hess from contacting clients whose accounts were sold from Hoaster to Gebhard for a period of two years. We agree that this time period was reasonable considering Hess' advanced age, and the modification was reasonable given the fact that he solicited one of Gebhard's former clients. The lower court also removed the geographic restriction and permitted Hess to gain employment in Lebanon. We also agree that this was reasonable considering Hess has lived and worked in Lebanon since 1974. Therefore, we find that the enforcement of the covenant not to compete, as modified by the lower court, was reasonable.

■ ¶ 25 Hess also argues that Hoaster and Gebhard had no need to enforce the covenant not to compete. We agree with the lower court's rationale:

We also reject Hess' proposition that the covenant was unreasonable because [Hoaster and Gebhard] had no need to enforce it. The facts belie this argument. Less than one week after leaving [Hoaster]'s employ, Hess solicited one of [Gebhard]'s keystone clients, the County of Lebanon. There was an obvious need for [Hoaster and Gebhard] to enforce their rights, as Hess used inside knowledge to lure away its clients. [Bowman's Insurance Agency] certainly expected Hess to produce some new business at the job with Bowman's Insurance Agency, and he likely hoped Hess could acquire some of [Hoaster's and Gebhard's] clients. To do so, however, contravened the express terms of the covenant. Though Hess was not a major producer during his tenure with Hoaster, there was the potential for him to use his acquired knowledge in a detrimental manner against [Hoaster and Gebhard], a potential [Bowman's Insurance Agency] hoped to capitalize upon.

Trial Court Adjudication, 12/29/99, at 9–10.

¶ 26 Clearly, Hoaster and Gebhard needed to enforce the covenant not to compete to prevent Hess from using inside knowledge to lure away Gebhard's clients that were formerly Hoaster's clients.

¶ 27 Hess also argues that the covenant should not be enforced because Gebhard's letter of recommendation waived any rights to enforce the covenant or was estopped from enforcing the covenant.

▮▮▮ ¶ 28 Waiver is a voluntary and intentional abandonment of a known right and may be established by a party's express declaration or by acts that warrant an inference of the relinquishment of such right. *See Marranca General Contracting Co., Inc. v. Amerimar Cherry Hill Assocs., L.P.,* 416 Pa.Super. 45, 610 A.2d 499 (1992). Estoppel means that a party is prevented from asserting a right based upon his own action of misrepresentation to the other party and the other party relied upon the misrepresentation. *See Chester Extended Care Center v. Cmwlth. Dept. of Public Welfare,* 526 Pa. 350, 355, 586 A.2d 379, 382 (1991).

▮▮▮ ¶ 29 After review of the letter of recommendation, we find that by writing the letter, Hoaster and Gebhard did not waive their right to enforce the covenant, nor did they misrepresent the covenant in such a manner that would bar them from enforcing it.

▮▮▮ ¶ 30 Hess' third contention on appeal is that the lower court erred in sustaining Hoaster's and Gebhard's preliminary objections in the nature of a demurrer to Hess' claim for intentional interference with prospective contractual relations. Our standard of review where a preliminary objection in the nature of a demurrer was sustained is:

> All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purpose of this review. The question presented by demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Booze v. Allstate Ins. Co.,* 750 A.2d 877, 878 (Pa.Super.2000) (quoting *Moser v. Heistand,* 545 Pa. 554, 559, 681 A.2d 1322, 1325 (1996) (citation omitted)). We must confine our analysis to the complaint and decide whether sufficient facts have been pleaded to permit recovery if the facts are ultimately proven. The demurrer may be granted only in cases that are so free from doubt that a trial would certainly be a fruitless exercise. *See Pawlowski v. Smorto,* 403 Pa.Super. 71, 588 A.2d 36, 38 (1991). We need not accept a party's allegations as true to the extent they constitute conclusions of law. *See Booze,* 750 A.2d at 879 (citing *Scarpitti v. Weborg,* 530 Pa. 366, 368, 609 A.2d 147, 148 (1992)).

¶ 31 Hess claims that he is entitled to maintain the tort action for intentional interference with prospective contractual relations based upon Hoaster's and Gebhard's writing of a letter jointly to Hess and Bowman's Insurance Agency threatening legal action. Bowman's Insurance Agency then decided not to hire Hess because of the threat of legal action.

▮▮▮ ¶ 32 To set forth a legally sufficient cause of action for intentional interference with contractual or prospective contractual relations, four elements must be pleaded:

1. the existence of a contractual, or prospective contractual relation between the complainant and a third party;

2. purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;

3. the absence of privilege or justification on the part of the defendant; and

4. the occasioning of actual legal damage as a result of the defendant's conduct.

*Pawlowski,* 588 A.2d at 39–40. The Restatement (Second) of Torts § 774A defines "actual damages" for interference with a contract as follows:

(1) One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for

    (a) the pecuniary loss of the benefits of the contract or the prospective relation;

    (b) consequential losses for which the interference is a legal cause; and

    (c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference....

¶ 33 The lower court held that Hess failed to meet the third element of the tort. We agree.

■ ¶ 34 Hess entered into an employment contract with Hoaster that contained a covenant not to compete in 1974. Hess obtained employment with a competing insurance agency in 1997. As we previously discussed, Hoaster's assignment of the employment contract to Gebhard was valid, and enforcement was reasonable. In response to Hess' new employment, Hoaster and Gebhard wrote a letter to Hess and Bowman's Insurance Agency informing the latter about the covenant not to compete and potential legal action if Hess violated said covenant. Therefore, we find that Hoaster and Gebhard were justified to assert their rights under the covenant not to compete. We conclude that lower court did not err in sustaining Hoaster's and Gebhard's preliminary objection in the nature of a demurrer as to Hess' failure to plead an essential element of the tort.

¶ 35 Hess also contends on appeal that the lower court erred in failing to award damages relating to his inability to obtain employment because of Hoaster's and Gebhard's conduct. However, since we have found that Hoaster's and Gebhard's conduct of enforcing the covenant not to compete was justified, Hess is not entitled to monetary damages.

¶ 36 Hess' fourth contention on appeal and Hoaster's and Gebhard's contention on cross-appeal is that they are entitled to attorneys' fees. Specifically, Hess requests attorneys' fees for having to defend Hoaster's and Gebhard's counterclaim. Hoaster's and Gebhard's counterclaim alleges that the lower court erred for failing to award attorneys' fees for having to defend Hess' claims. We will first address Hoaster's and Gebhard's counterclaim.

¶ 37 Hoaster's and Gebhard's counterclaim asserts that they should be awarded attorneys' fees because Hess was aware of the covenant not to compete making his claim for intentional interference with prospective contractual relations arbitrary and vexatious.

■ ¶ 38 After reviewing the record, we find that Hoaster and Gebhard failed to raise their counterclaim before the lower court. Therefore, it is not properly preserved for our review. *See* Pa.R.A.P. 302 (issues not raised in the lower court are waived and cannot be raised for the first time on appeal). However, Hoaster and Gebhard allege that the lower court filed its final decree before they could list their counterclaim for a hearing so their claim should be remanded to the lower court because fees are appropriate.

■ ¶ 39 Even if the issue were properly before us, we find that attorneys' fees are not appropriate in this instance. As a general rule, we, as an appellate court, have no power to award counsel fees for proceedings below. *See Gossman v. Lower Chanceford Twp. Bd. of Supervisors,* 503 Pa. 392, 469 A.2d 996 (1983). Our review of an award for attorneys' fee

is whether the lower court abused its discretion. *See Thunberg v. Strause,* 545 Pa. 607, 615, 682 A.2d 295, 299 (1996). Here, the lower court did not award attorneys' fees to Hoaster and Gebhard. Attorneys' fees are appropriate where a lawsuit is vexatious, which means one that was instituted without sufficient grounds and only served to cause annoyance. *See, e.g., Pa. State Police v. Benny Enterprises, Inc.,* 669 A.2d 1018 (Pa.Cmwlth.1995). After reviewing the record, we do not find any evidence that Hess' claims were vexatious in nature. Therefore, we do not find any reason to remand Hoaster's and Gebhard's counterclaim for attorneys' fees to the lower court.

¶ 40 Hess, in turn, asks this court to award attorneys' fees for having to defend Hoaster's and Gebhard's claim for attorneys' fees. Rule 2744 of Pennsylvania's Appellate Rules of Procedure authorizes an appellate court to award reasonable attorney fees if it is determined that "an appeal is frivolous or taken solely for delay, or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." *See Township of S. Strabane v. Piecknick,* 546 Pa. 551, 557, 686 A.2d 1297, 1300 (1996). We have reviewed the record and do not find that Hoaster's and Gebhard's request for attorneys' fees is vexatious warranting an award of attorneys' fees to Hess.

¶ 41 Final decree affirmed.

¶ 42 FORD ELLIOTT, J. files a Dissenting Statement.

FORD ELLIOTT, J., dissenting:

¶ 1 I respectfully dissent. I am unable to distinguish *All–Pak, Inc. v. Johnston,* 694 A.2d 347 (Pa.Super.1997), as does the majority.