LIBERTY PROPERTY TRUST d/b/a
Liberty Property Limited
Partnership, Appellant

v.

DAY–TIMERS, INC., Appellee.

Superior Court of Pennsylvania.

Argued Sept. 24, 2002.
Filed Jan. 8, 2003.

James C. Dalton, Paoli, for appellant.

Henry S. Perkin, Allentown, for appellee.

Before: McEWEN, P.J.E., TODD and MONTEMURO,* JJ.

TODD, J.:

¶ 1 Liberty Property Trust d/b/a Liberty Property Limited Partnership ("Liberty") appeals the judgment entered against it and in favor of Day–Timers, Inc. ("Day–Timers") in this lease dispute. We reverse.

¶ 2 In 1988, Day–Timers, as lessee, entered into a lease with Liberty's predecessor-in-interest. The lease, as amended in 1991 ("First Addendum"), contained a no oral modification clause which stated that any changes to the agreement had to be in writing. Article 4 of the First Addendum also provided a rent schedule which set forth a flat rental charge through June 1, 1996, and, thereafter, annual rental increases based on the percentage increase in the Consumer Price Index ("CPI") between June 1991, the "base CPI", and the CPI at the time of the adjustment.[1]

---

* Retired Justice assigned to Superior Court.

1. The provision reads in full:
   Article 4   Minimum Rent
      Lessee hereby covenants and agrees to pay Lessor minimum monthly rent of Fifty Thousand Eight Hundred Seventy Five Dollars ($50,875) until June 1, 1996, at which time the minimum monthly rental will be increased by the percentage increase in the Revised Consumer Price Index for All Urban Consumers between June 1, 1991 and

June 1, 1996.  Beginning with June, 1996, the minimum monthly rental will increase annually thereafter commencing each June during the remaining term of this Lease, and all option periods, by the percentage increase in the Revised Consumer Price Index for All Urban Consumers between June 1991 and the adjustment date, but in no event will the minimum monthly rental payable in any year be greater than such rent would have been if there had been a cumu-

¶ 3 Prior to the June 1996 increase, in April 1996, a representative of Liberty's predecessor-in-interest, then First Industrial Financing Partnership, L.P. ("First Industrial"), sent a letter to Day–Timers proposing to set the rent for 1996 at $54,945, an increase of only 8%, compared with the 15% increase that would result from the CPI calculation under the First Addendum. (Letter, 4/16/96, Defendant's Trial Exhibit 3.) The next month, First Industrial's representative sent a second letter to Day–Timers, including a proposed Second Addendum to the lease that accounted for the proposed 1996 rent and based future increases on the change in the CPI for each respective year, rather than by comparison to the 1991 CPI.[2] (Letter and Attachment, 5/9/96, Defendant's Trial Exhibit 4A & 4B.) As in the First Addendum, annual increases were capped at 4%. (*Id.*) The proposed Second Addendum was never executed by the parties, but nevertheless the charged rent was $54,945 for 1996 and thereafter was calculated by First Industrial according to the new CPI calculation in the unexecuted proposed modification to the lease.

¶ 4 In 1997, First Industrial sold the premises to Liberty and, as part of the sale, assigned to Liberty the Day–Timers' lease. Thereafter, Liberty charged rent in accordance with the terms of the First Amendment to Lease. When Day–Timers refused to pay the difference, Liberty sued for breach of lease (Count I of its complaint) and declaratory relief (Count II).

¶ 5 After trial on March 13, 2001, the trial court concluded that the unexecuted modification was enforceable as an oral modification to the lease (which implicitly waived the no-oral-modifications clause) and, on May 3, 2001, entered judgment in favor of Day–Timers. Liberty was permitted to, and did, file a post-trial motion *nunc pro tunc* in late May 2001. Before the motion was ruled upon, on Liberty's praecipe, the prothonotary entered judgment against Liberty[3] on February 5, 2002, and Liberty's timely appeal followed.

¶ 6 On appeal, Liberty asks:

1.  Should evidence concerning an alleged oral modification of the Lease be admitted and considered where such oral modification is prohibited by the express written terms of the Lease?

2.  Did the tenant and landlord's predecessor in title intend to waive the no

---

lative, compounded 4 percent per annum increase each year.
(First Addendum to Lease, 5/8/91, Plaintiff's Trial Exhibit 2 at 2.)

2.  The draft amendment provided the following revised calculation for the CPI adjustment:

    The change in the CPI ["U.S. City Average Consumer Price Index for All Urban Consumers (Revised Series)"] to be employed for each such calculation shall be the change occurring between (i) the CPI as reported for the month of February in the calendar year immediately preceding the calendar year during which the calculation is being made ("Base CPI") and (ii) the CPI reported for the month of February in the calendar year for which the calculation is

being made ("Later CPI"). With the "Previous Rent" being defined as being Tenant's fixed minimum rent applicable to the lease year immediately preceding that for which the calculation is being made, Tenant's fixed minimum rent obligation for each lease year shall be at least equal to the Previous Rent and shall be increased by the amount, if any, by which such Previous Rent is exceeded by the amount which bears the same ratio to the Previous Rent as the Later CPI bears to the Base CPI.
(Letter and Attachment, 5/9/96, Defendant's Exhibit 4A & 4B at 3–4.)

3.  Pursuant to Pa.R.C.P. 227.4(1)(b), upon praecipe, the prothonotary is directed to enter judgment where post-trial motions have been outstanding for more than 120 days.

oral modification clause contained in the Lease?

3. Does the alleged oral modification violate the Statute of Frauds?

4. Was the tenant estopped from asserting the oral modification where it failed to disclose the alleged modification in the Tenant Estoppel Certificate relied upon by landlord and where landlord was a bona fide purchaser with no notice of the alleged modification prior to purchase?

5. Is the asserted oral modification of the Lease enforceable where such modification lacks consideration?

6. Was this appeal timely filed?

(Appellant's Brief at 4.)

■ ¶ 7 Our standard of review with respect to the action of a chancellor in equity is limited. *Thermo–Guard, Inc. v. Cochran,* 408 Pa.Super. 54, 63, 596 A.2d 188, 193 (1991). We will reverse only where the trial court was "palpably erroneous, misapplied the law or committed a manifest abuse of discretion." *Id.* Where there are any apparently reasonable grounds for the trial court's decision, we must affirm it. *Id.*

¶ 8 Initially, we must determine whether this case is properly before us. Following trial, by order dated May 3, 2001, the trial court granted judgment in favor of Day–Timers on Liberty's claims for breach of lease and declaratory relief.[4] In its ac-

companying opinion, the court noted that its order stemmed from its conclusion that the lease had been orally modified, and so it is clear that the May 3, 2001 Order denied Liberty the declaratory relief it requested.

¶ 9 Orders granting or denying declaratory relief are by statute final orders and, therefore, immediately appealable. *See* 42 Pa.C.S.A. § 7532 (the "Declaratory Judgments Act");[5] Pa.R.A.P. 341(b). Liberty did not file an immediate appeal within 30 days as required by Pa.R.A.P. 903, but rather filed a post-trial motion *nunc pro tunc.* The issue, therefore, is whether Liberty's appeal should be quashed as a result.

¶ 10 In asserting that this appeal should be quashed because Liberty did not file an immediate appeal, Day–Timers cites *State Farm Fire and Cas. Co. v. Craley,* 784 A.2d 781 (Pa.Super.2001) (en banc), *appeal granted* 568 Pa. 704, 796 A.2d 985 (2002). Therein, this Court held that appellant's appeal should be quashed because, following a trial on stipulated facts in its declaratory judgment action, appellant filed post-trials motions and not an immediate appeal. We held that an immediate appeal was required under the Declaratory Judgment Act:

> A careful reading of the statute and cases interpreting the statute leads to the inescapable conclusion that regard-

---

4. The order reads:

 AND NOW, this 3rd day of May, 2001, after bench trial before the undersigned upon Plaintiffs' Complaint in Declaratory Judgment, and for the reasons set forth in the accompanying Opinion, it is HEREBY ORDERED that Judgment is entered in favor of the Defendant Day–Timers, Inc. and against Plaintiff Liberty Property Trust, d/b/a Liberty Property Limited Partnership.

 (Order, 5/3/01.)

5. This section states:

 Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed, No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

 42 Pa.C.S.A. § 7532

less of whether a case involves a jury or a non-jury trial, regardless of whether a case involves testimonial evidence or was submitted on stipulated facts, in a declaratory judgment action, if a trial court issues an order that affirmatively or negatively declares the rights of the parties, such an order is final and immediately appealable.

*Id.* at 788. Accordingly, under *Craley,* Liberty was obliged to file an immediate appeal within 30 days of the May 3, 2001 Order rather than filing a post-trial motion.

■ ¶ 11 However, a recent decision from our Supreme Court, *Chalkey v. Roush,* 569 Pa. 462, 805 A.2d 491 (2002), has cast serious doubt on our decision in *Craley,* which is presently on appeal. Regardless, *Chalkey* dictates that post-trial motions were the appropriate course of action here. Clearing up confusion in the lower courts about post-trial practice in equity actions in *Chalkey,* the Court ruled that post-trial motions practice applies to both law and equity cases, and that "there is no excuse for a party's failure to file post-trial motions from a trial court's order following an equity trial". *Id.* at 469, 805 A.2d at 496. Further, with respect to equity trials that involve declaratory relief, the Court found that the same procedure applies, despite the Declaratory Judgment Act's expression of finality for such orders:

> While the Declaratory Judgment Act states that court declarations made under the Act shall have the force of a final order, the Act also states that where issues of fact must be determined in an action seeking declaratory judgment, those issues must be determined as in other civil actions. 42 Pa.C.S. § 7539; *see also* Pa.R.C.P. 1601. Therefore, where a trial court enters a declaratory order following a trial, parties must file post-trial motions from that order, as they would in any other civil proceeding, before the order may be deemed a final order for purposes of an appeal.

*Id.* at 470 n. 13, 805 A.2d at 496 n. 13. Under *Chalkey,* therefore, Liberty was required to file post-trial motions, as it did.[6] Accordingly, we will not quash Liberty's appeal, and proceed to address the merits.

■ ¶ 12 We will first address the fourth issue which Liberty raises on appeal, as we find it is dispositive. There, Liberty argues that Day–Timers should be equitably estopped from asserting the oral modification of the lease in light of representations it made in the "Tenant Estoppel Certificate" it executed in conjunction with the sale of the premises by First Industrial to Liberty. Liberty asserts that it relied on the representations in the certificate, and that, in light of those representations, it would be inequitable to allow Day–Timers to rely on the oral modification.

¶ 13 Here, as in the trial court, Day–Timers does not dispute that it failed to disclose the oral modification on the estoppel certificate, but notes that the rental amount disclosed in the certificate was accurate and, for that and other reasons,

---

**6.** We recognize that the Court in *Chalkey* explicitly declared that its decision was prospective only. *Id.* at 471, 805 A.2d at 497. However, the Court so limited its decision in light of the confusion in the lower courts about the appropriate post-trial practice in equity cases (versus cases at law), implicitly recognizing the unfairness of punishing the appellant in that case for its failure to file post-trial motions given such confusion. *Id.* For similar reasons, it would be anomalous if, here, we were to punish Liberty by quashing its appeal *for filing post-trial motions,* when *Chalkey* clearly indicates that that was the appropriate procedure: refusing to apply *Chalkey*'s analysis in this case would result in the same unfairness that led the Supreme Court in *Chalkey* to limit its decision to prospective-only application. We will not reach such an unfair and nonsensical result.

asserts that Liberty was on notice of the modification. The trial court agreed that Liberty was on notice that "rent was not being paid in accordance with the Lease terms" and concluded that Day–Timers' silence was not intentional or culpably negligent. (Trial Court Opinion, 5/3/01, at 11.) As a result, the trial court found that Day–Timers should not be equitably estopped from asserting the lease modification.

¶ 14 As our Supreme Court has explained, equitable estoppel is a doctrine sounding in equity which acts

> to preclude one from doing an act differently than the manner in which another was induced by word or deed to expect. *Novelty Knitting Mills, Inc. v. Siskind,* 500 Pa. 432, 457 A.2d 502 (1983). It "arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." *In re Estate of Tallarico,* 425 Pa. 280, 288, 228 A.2d 736, 741 (1967). When estoppel is established, the "person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist, aver a different or contrary state of facts as existing at the same time, or deny or repudiate his acts, conduct, or statements." *Id.* 425 Pa. at 288, 228 A.2d at 741.

> There are two essential elements to estoppel; inducement and reliance. *Novelty Knitting,* 500 Pa. at 432, 457 A.2d at 502. "The inducement may be words or conduct and the acts that are induced may be by commission or forbearance provided that a change in condition results causing disadvantage to the one

induced." *Id.* 500 Pa. at 436, 457 A.2d at 503–504.

*Zitelli v. Dermatology Educ. & Research Found.,* 534 Pa. 360, 370, 633 A.2d 134, 139 (1993). The Court emphasized:

> There can be no equitable estoppel where the complainant's act appears to be rather the result of his own will or judgement than the product of what defendant did or represented. The act must be induced by, and be the immediate or proximate result of, the conduct or representation, which must be such as the party claiming the estoppel had a right to rely on. The representation or conduct must of itself have been sufficient to warrant the action of the party claiming the estoppel. If notwithstanding such representation or conduct he was still obliged to inquire for the existence of other facts and to rely on them also to sustain the course of action adopted, he cannot claim that the conduct of the other party was the cause of his action and no estoppel will arise.

*Zitelli,* 534 Pa. at 371, 633 A.2d at 139–40 (quoting *Tallarico,* 425 Pa. at 288–289, 228 A.2d at 741).

¶ 15 In the Tenant Estoppel Certificate executed for Liberty's benefit in conjunction with the sale of the premises by First Industrial, Day–Timers declared, *inter alia,* that:

> Tenant [Day–Timers] is in occupancy of the demised premises and the Lease is in full force and, effect and except by such writings as are identified on Exhibit A hereto, *has not been modified, assigned, supplemented or amended* since its original execution, *nor are there any other agreements* between Landlord and Tenant concerning the space rented under the Lease, *whether oral or written.*

(Tenant Estoppel Certificate, Exhibit to Agreement of Sale dated 11/25/97 (Plaintiff's Trial Exhibit 5) (hereinafter "Estop-

pel Certificate"), at 1 (emphasis added).) Listed in Exhibit A to the Estoppel Certificate under "Modifications, Assignments, Supplements or Amendments to Lease" were two prior assignments of the lease, and the 1991 First Addendum to Lease, but no reference was made to the modification to the lease which is at the heart of this dispute. (Exhibit A to Estoppel Certificate.) Thus, Day–Timers made an affirmation representation in the certificate that there were *no* oral modifications of the lease, precisely the opposite of what it now claims to be the case.

¶ 16 While admitting the certificate's inaccuracy, Day–Timers nonetheless asserts, and the trial court agreed, that Liberty was on notice of the oral modification. Specifically, Day–Timers first notes that the rental amount disclosed on the Estoppel Certificate was consistent with the calculation under the asserted oral modification of the lease. In fact, Day–Timers accurately disclosed in this exhibit that the current minimum rent was $674,484, or

$56,207 per month (*id.*), an amount which for the sake of argument we assume is consistent with the rent calculation modification under the asserted oral agreement. For this amount to put Liberty on notice of the oral modification, however, Liberty would have had to calculate the rent due under the rent calculation in the First Addendum to determine that there was a discrepancy, as neither Day–Timers nor the trial court assert that the amount of the rent, on its face, indicates a different rental calculation.

¶ 17 Second, Day–Timers asserts that the "Leases" exhibit to the agreement of sale "clearly and plainly states that the increase in rent was to be determined by the percentage increase in the CPI on an annual basis, directly contrary to the language of the rental provision in the Lease." (Appellee's Brief at 25.) In the summary of leases attached to the agreement of sale, the base rent for Day–Timers' lease is disclosed as follows:

| | |
|---|---|
| 2/1/1988 – 5/31/1991 | $5.50 psf; $46,635.42/month |
| 6/1/1991 – 5/31/1996 | $6.00 psf; $50,875.00/month |
| 6/1/1996 – 5/31/1997 | $6.48 psf; $54,945.00/month |
| 6/1/1997 – 5/31/1998 | $6.63 psf; $56,207.00/month |
| 6/1/1998 – 5/31/2001 | Annual CPI adjustment, capped at 4% |

(Leases Exhibit, Exhibit to Agreement of Sale dated 11/25/97 (Plaintiff's Trial Exhibit 5), at 2.)

¶ 18 We fail to see how these notations—specifically that the rent after June 1998 was based on an "[a]nnual CPI adjustment"—put Liberty on notice, as the calculation in the First Addendum, and the calculation under the asserted oral modification, are variations based on the Consumer Price Index ("CPI"), calculated annually. The calculations differ only in the base CPI used for the annual adjustment: under the oral modification, the annual rent increase was computed by comparing the CPI of the adjustment date to the CPI

of the prior year, instead of comparing the adjustment date CPI to the June 1, 1991 CPI as defined in the First Addendum. Further, under either calculation, the increase is capped at 4%. Thus, the notation on the "Leases" exhibit to the agreement of sale is broadly consistent with either calculation.

¶ 19 While Day–Timers asserts that "[t]he evidence presented at trial establishes that Liberty either knew about the oral modification of the Lease or, at the very least, should have known about the oral modification of the Lease" (Appellee's Brief at 24), aside from the two points discussed above—which we find to consti-

tute insufficient notice—Day–Timers cites to no other evidence supporting this claim. By contrast, Liberty cites the uncontradicted testimony of Brian D. Coleman, vice president of property management for Liberty, that Liberty was unaware of the oral modification:

> Counsel: Prior to this litigation, were you ever made aware of any allegation or position from any party at any time that there was an oral—an alleged oral agreement between the tenant, Day–Timers, and Liberty's predecessor in interest, First Industrial?
>
> [Objections by opposing counsel overruled]
>
> Mr. Coleman: No I did not.

(N.T. Trial, 3/13/01, at 17–18.) Given Day–Timers' explicit declaration in the Estoppel Certificate that there were no modifications to the Lease other than those it declared, oral or otherwise, and given the inconsequential notice evidence, we conclude that the trial court abused its discretion in concluding that Liberty was on notice of the oral modification.

¶ 20 Further, we conclude that the trial court misapprehended the requirements for finding equitable estoppel. The court stated:

> we do not believe that Day–Timers' silence was intentional or with culpable negligence .... We do not find that Day–Timers was intentionally silent about the modification in rent in order to induce Liberty to buy the property, and as such Day–Timers is not estopped from asserting the modification that Day–Timers and First Industrial entered into.

(Trial Court Opinion, 5/3/01, at 11.) First, Day–Timers was not *silent* about the modification. Rather, it *explicitly declared* that no oral modifications existed. (*See* Estoppel Certificate.) Second, it is not necessary that Day–Timers acted intentionally to induce Liberty to buy the property. All that is required for estoppel is that one's conduct intentionally or negligently "induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." *Zitelli*, 534 Pa. at 370, 633 A.2d at 139 (quoting *In re Estate of Tallarico*, 425 Pa. 280, 288, 228 A.2d 736, 741 (1967)). At the very least, by denying any oral modifications to the lease, Day–Timers negligently induced Liberty into believing that the lease was in effect as written, and undoubtedly Liberty will be prejudiced if Day–Timers is allowed to rely on the oral modification—specifically, Liberty will be paid less rent. Indeed, it is apparent to this Court that the whole purpose of tenant estoppel certificates is to avoid the very situation that resulted in this law suit.

¶ 21 For all the foregoing reasons, we conclude that the trial court abused its discretion in concluding that Day–Timers was not equitably estopped from asserting an oral modification of the lease where it clearly denied the existence of any such modification in the Estoppel Certificate; where Liberty had insufficient notice of the existence of such modification; and where Liberty relied on Day–Timers' representations.[7] Accordingly, the trial court erred in granting judgment to Day–Timers, and we vacate that judgment and remand for proceedings consistent with this opinion.

---

**7.** Given our resolution of this issue, we need not address Liberty's remaining contentions on appeal.

¶ 22 Judgment vacated.  Case remanded.  Jurisdiction relinquished.