J-A35030-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DR. JERJIS ALAJAJI, AN ADULT INDIVIDUAL, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DUBOIS RADIOLOGISTS, INC., A DULY FORMED AND EXISTING PENNSYLVANIA CORPORATION; GHAZANFAR A. SHAH, M.D., AN ADULT INDIVIDUAL; AND GEORGE M. KOSKO, M.D. AN ADULT INDIVIDUAL, | |
| Appellees | No. 326 WDA 2015 |

Appeal from the Judgment Entered February 25, 2015
In the Court of Common Pleas of Clearfield County
Civil Division at No(s): 06-1018-CD

BEFORE:  BENDER, P.J.E., SHOGAN, and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:              **FILED MARCH 31, 2016**

Dr. Jerjis Alajaji ("Appellant") appeals from the judgment entered after the trial court denied his exceptions to a master's report and recommendation.[1]  Specifically, Appellant challenges the denial of his

_____

[1] Appellant purports to appeal from the February 12, 2015 order denying his post-trial motion.  This position is flawed for two reasons.  First, "[a] motion for post-trial relief **may not be filed to** . . . motions relating to discovery or other proceedings which do not constitute a trial." Pa.R.C.P. 227.1(c) at *Note* (emphasis supplied) (citing **U. S. National Bank in Johnstown v. Johnson**, 487 A.2d 809 (Pa. 1985)).  Here, following a proceeding that did not constitute a trial, Appellant filed a motion for post-trial relief.  This was a nullity.  Second, the trial court entered an order denying Appellant's
*(Footnote Continued Next Page)*

requests for a pro-rated share of profits, prejudgment interest, and punitive damages.  For the reasons that follow, we affirm.

Appellant and Dr. George M. Kosko ("Dr. Kosko") were minority shareholders of DuBois Radiologists, Inc. ("DRI"), a subchapter S corporation that provided radiology services to DuBois Regional Medical Center ("Hospital").  Hospital was the controlling partner of DuBois Magnetic Imaging Center ("DMIC"), the MRI (magnetic resonance imaging) unit that performs studies within Hospital.  Dr. Ghazanfar Shah ("Dr. Shah") was Director of Radiology at Hospital, the majority shareholder of DRI, and the sole shareholder of Raintree MRI, Inc. ("Raintree"), a company under contract with DMIC to handle DMIC's patient billing.  In providing billing services to DMIC, Raintree utilized DRI's equipment and personnel, including DRI's office manager, Rhonda Heffner ("Ms. Heffner").

Following the termination of his privileges at Hospital and his position with DRI, Appellant filed a petition for injunctive relief and, subsequently, an amended complaint for preliminary and permanent injunctive relief, declaratory judgment, breach of contract, and appointment of a corporate

*(Footnote Continued)* ─────────────────

exceptions on January 28, 2014, thereby affirming the master's recommendation.  At our direction, Appellant praeciped the court of common pleas prothonotary to enter judgment.  Judgment was entered on February 25, 2016. ***See Johnston the Florist, Inc. v. TEDCO Constr. Corp.***, 657 A.2d 511 (Pa. Super. 1995) ("[E]ven though the appeal was filed prior to the entry of judgment, it is clear that jurisdiction in appellate courts may be perfected after an appeal notice has been filed upon the docketing of a final judgment.").  We have amended the caption accordingly.

custodian. Amended Complaint, 8/23/06, at Counts I–V. By stipulated orders, the trial court set forth a mediation procedure for resolution of the parties' dispute and appointed Certified Public Accountant Robert Grossman of Grossman, Ford and Yanek, an accounting firm with specialized knowledge in the medical industry, to serve as a master. Stipulated Orders, 3/29/12 and 4/25/12.[2] Mr. Grossman ("the Master") was charged with addressing narrowly tailored financial issues that the parties had not been able to resolve after six years of litigation. Stipulated Order, 3/29/12, at ¶¶ 9, 11.

Over the course of two years, the Master investigated and calculated (1) the value of Appellant's sixteen percent stock holdings in DRI; (2) the value of Appellant's share of DRI's profits; (3) Appellant's share, if any, of profits or losses generated by Raintree; and (4) Appellant's share, if any, of the director's fee paid to DRI by Hospital. Master's Report Summary Letter, 2/24/14, at 1–2. The Master valued Appellant's DRI stock holdings at $72,700 and his share of DRI profits at $111,518. Master's Report, 2/13/14, at 3–4. Having determined that the profits generated by Raintree were *de minimus*, the Master concluded that Appellant's share of Raintree profits was $0.00. *Id.* at 5. The Master also determined that the director's

---

[2] The first stipulated order was issued on March 22, 2012, and filed on March 29, 2012. The second stipulated order was issued on April 23, 2012, and filed on April 25, 2012.

fee was payable to Dr. Shah for his services and, therefore, did not pass through to DRI for distribution to its shareholders, *i.e.*, Appellant. *Id.* at 8.

Appellant filed seven exceptions, labeled "objections," to the Master's report, and Dr. Kosko, Dr. Shah, and DRI (collectively "Defendants") filed a motion to strike some of the objections. Objections to Master's Report, 3/24/14; Motion to Strike, 5/5/14. Agreeing with Defendants, the trial court granted the motion to strike, thereby dismissing Appellant's claims for interest on his share of DRI profits, use of a "fair value" standard with regard to his DRI shares, and punitive damages. Order and Opinion, 7/29/14, at 2, 5. The trial court conducted a two-day hearing on the remaining objections in November of 2014 and permitted briefing. Order, 11/26/14. Thereafter, the trial court denied Appellant's objections and wholly adopted the Master's report and recommendation, awarding Appellant $184,218. Order, 1/28/15. Appellant filed a document entitled, "Motion for Post-Trial Relief," which the trial court dismissed. Motion for Post-Trial Relief, 2/9/15; Order, 2/12/15. This appeal followed.

On appeal, Appellant presents the following questions for our review:

1. WHETHER PROFIT SOLELY GENERATED THROUGH USE OF A DOMINATED CORPORATION'S ASSETS BELONGS TO THAT CORPORATION?

2. WHETHER FUNDS DEPRIVED TO A MINORITY SHAREHOLDER ARE ENTITLED TO INTEREST?

3. WHETHER PUNITIVE DAMAGES ARE APPROPRIATE WHEN A CORPORATION THROUGH ITS MAJORITY SHAREHOLDERS ACTS OPPRESSIVELY AGAINST A MINORITY SHAREHOLDER?

Appellant's Brief at 4.[3]

Appellant first claims that the trial court erred in concluding that he is not entitled to a pro-rated share of Raintree's profits from 1999 through 2010. Appellant's Brief at 13, 22. Appellant contends that, "Raintree, the entity solely owned by defendant DRI's majority shareholder, defendant Dr. Shah, received profit each and every year by using the employees, equipment, cash and other assets of DRI, as [Dr. Shah's] own property." *Id.* at 14. According to Appellant, as a shareholder of DRI, he is entitled to profits received by Raintree through the use of DRI's assets. In support of his position, Appellant cites **Bailey v. Jacobs**, 189 A. 320 (Pa. 1936), and **Rivoli Theatre Company v. Allison**, 152 A.2d 449 (Pa. 1949), for the proposition that "profit made through corporate assets belong to the corporation." Appellant's Brief at 13–14. Furthermore, Appellant insists that, given "Raintree's just share of the freely provided rent, postage, insurance, utilities, and postage [sic], the true expense to DRI was in reality

---

[3] The trial court allowed Appellant's post-trial motion to serve as his Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Order, 2/12/15. Appellant raised the same issues in his post-trial motion and in his Statement of Questions Presented. Motion for Post-Trial Relief, 2/9/15, at 1–2; Appellant's Brief at 4. However, in its opinion to this Court, the trial court addressed Appellant's objections to the Master's report, not the claims raised in his post-trial motion. Trial Court Opinion, 1/28/15, at 4–9. Consequently, the trial court did not address Appellant's second and third appellate issues. For the trial court's analysis on those two issues, we shall rely on its opinion addressing Defendants' motion to strike. Opinion and Order, 7/29/14, at 3.

not de minimis . . . and remains purely immaterial and irrelevant given Bailey and Rivoli." Appellant's Brief at 16.

Our standard of review in equity is limited. *Viener v. Jacobs*, 834 A.2d 546, 554 (Pa. Super. Ct. 2003) (citing *Liberty Prop. Trust v. Day–Timers, Inc.*, 815 A.2d 1045, 1048 (Pa. Super. 2003)). We will reverse only where the trial court was "palpably erroneous, misapplied the law or committed a manifest abuse of discretion." *Day–Timers*, 815 A.2d at 1048 (citing *Thermo–Guard, Inc. v. Cochran*, 596 A.2d 188, 193 (Pa. Super. 1991)). Where there are any apparently reasonable grounds for the trial court's decision, we must affirm it. *Id.* at 1048. Moreover, "[a]bsent an abuse of discretion or an error of law, we are bound to accept the findings of the trial court or master, particularly where the findings are largely dependent upon the credibility of the witnesses." *Werner v. Werner*, 573 A.2d 1119, 1121 (Pa. Super. 1990).

Here, the Master found that DRI's costs associated with Raintree's billing services to DMIC were "not material." Master's Report, 7/19/14, at 5. Thus, the Master concluded that "no profit or loss generated by Raintree MRI Services, Inc. should be allocated to [Appellant] as a shareholder of DRI." *Id.* Based on a credibility determination, the trial court agreed:

> The long-time office manager for DRI and the person who personally handled the billing related activities for Raintree, Rhonda Heffner, testified at the Hearing. She personally prepared the global billing invoices for both the professional and technical components of the services provided by use of a standardized HCFA form. An HCFA form is "a standard insurance

claim form that is accepted by all insurance companies to document who the patient was and what the service was they had rendered, and also identify who rendered the service." (11/14/14 Hearing Transcript, pg. 101.) Ms. Heffner also testified that the same HCFA standard form would be used whether you were billing globally (*i.e.*, both the professional and technical components) or whether you were billing only for the DRI professional component.

As Ms. Heffner's credible testimony indicates, one second is the amount of additional time she spent in order to prepare global bills as opposed to preparing bills solely for the DRI professional component. Ms. Heffner also testified to the amount of time she spent handling the banking related matters once payments were received for the global bills issued. As the Master concluded, and as Ms. Heffner confirmed in her testimony, the time was *de minimis*.

In support of [this issue, Appellant] offered no testimony or evidence to refute Ms. Heffner's testimony or the findings and conclusions of the Master. Notably, [Appellant's] expert, Mr. Kindler, offered no opinion on the issue of whether the Master erred in determining that [Appellant] is not entitled to any additional profit or revenue generated by Raintree for use of DRI's employees and equipment to perform billing services.

Trial Court Opinion, 1/28/15, at 6–7.

Upon review, we discern no basis upon which to disturb the trial court's ruling. The trial court accepted Ms. Heffner's testimony as credible. Ms. Heffner's and the Master's testimony confirmed that DRI's Raintree-billing costs were *de minimus*. N.T., 11/14/14, at 20, 56, 99–103. The record also establishes that, as a result of DMIC's billing agreement with Raintree, DRI received eighteen percent of the revenue for billed professional services; Appellant's share of that revenue was included in his income. ***Id.*** at 18–20, 57, 125, 133; N.T., 11/24/14, at 23. Furthermore,

Raintree received four percent of the revenue as a fee for Dr. Shah for his administrative services, to which Appellant was not entitled. *Id.* at 18, 23–24, 65–66, 69, 71, 125, 133–134; N.T., 11/24/14, at 33–34. Moreover, unlike the Master, who was charged with determining if Appellant was eligible to share in Raintree's profits, Appellant's expert did not offer an opinion on that topic. N.T., 11/24/14, at 13, 22. Rather, Appellant's expert calculated Appellant's share of Raintree's profits based on an assumption that Appellant was entitled to share in Raintree's profits. N.T., 11/24/14, at 13, 15. Lastly, Appellant's expert did not have an opinion as to DRI's costs or expenses with respect to Raintree's billing. *Id.* at 24. Based on Defendants' uncontroverted evidence of record, we discern no abuse of the trial court's discretion or error of law.

Moreover, we do not consider **Bailey** or **Rivoli** dispositive. In **Bailey**, the defendant purchased patents, patent rights, and equipment with money belonging to two companies of which he was president. He transferred the assets to a Delaware corporation that he organized; in return, he received the entire capital stock of the new company. **Bailey**, 189 A. at 323–324. In an equity action brought by shareholders, the chancellor found the defendant's transactions "to be wholly reprehensible, but held that recovery as to some of them was barred by the statute of limitations. The court [en] banc held that all were so barred, and dismissed the bill." *Id.* at 323. However, the Pennsylvania Supreme Court reversed, holding that, because

the defendant "made profits from his personal use of the corporate funds, and because the patents and patent rights purchased by him were highly desirable for the Paper Company's purposes, he must account accordingly." *Id.* at 325.

Unlike the **Bailey** defendant, Dr. Shah did not take assets belonging to DRI and purchase other assets that were highly desirable for DRI's purposes. Rather, DRI already billed the physician component of MRI services.[4] In doing so, DRI paid expenses for rent, utilities, insurance, a post office box, postage, equipment, and Ms. Heffner's time. Consequently, the additional second Ms. Heffner spent inputting the technical component of MRI services to send out a global bill "added nothing" to DRI's costs. Heffner Deposition, 1/5/07, at 101–107.

Similarly, we dispose of **Rivoli**. Therein, three Blair County men formed a corporation that ran a movie theatre. The defendant was vice-president of the corporation and manager of the theatre. In an effort to

---

[4] Specifically, a patient receiving an MRI at DMIC would receive a bill for technical services (*i.e.*, technician performs an MRI) and a bill for professional services (*i.e.*, physician interprets MRI). As the physician group, DRI received eighteen percent of DMIC's gross receipts. For its billing services, Raintree received four percent of DMIC's global billing amounts. DMIC sent all payments to a post office box paid for by DRI and shared with Raintree. Heffner Deposition, 1/5/07, at 45; N.T., 11/14/14, at 102. Ms. Heffner deposited all payments into an account dedicated to DMIC as reimbursements for the professional and technical components. Separately, Ms. Heffner deposited Raintree's portion of the global billing into an account opened by Dr. Shah. Heffner Deposition, 1/5/07, at 45, 50–55; N.T., 11/14/14, at 102–103.

increase sales, the defendant introduced candy vending machines and commercial advertising to the theatre, pocketing the sideline concession profits for his personal use without "full and frank disclosure" to the stockholders or officers of the corporation. *Rivoli*, 152 A.2d at 451. In light of the defendant's admissions, the trial court entered a directed verdict and denied the defendant's request for a new trial. *Id.* On appeal, the Pennsylvania Supreme Court stated, "[T]he test of liability is whether [the corporate officers or directors] have unjustly gained enrichment." *Id.* (quoting *Bailey*, 189 A. at 324). Citing the defendant's admissions, the Supreme Court found it "quite clear that [the defendant] enriched himself at the corporation's expense" and affirmed the directed verdict. *Id.*

Unlike the *Rivoli* defendant, Dr. Shah did not enrich himself at DRI's expense. DRI incurred no expense on behalf of Raintree. DRI was already financially supporting the professional billing services and, as previously stated, the additional second Ms. Heffner spent inputting the technical component of MRI services to send out a global bill "added nothing" to DRI's costs. Heffner Deposition, 1/5/07, at 101–107; N.T., 11/14/14, at 102–103.

Next, Appellant argues that he is entitled to prejudgment interest on his share of DRI and Raintree profits from 2007 through 2012, which amounts to $73,952 and $54,472, respectively. Appellant's Brief at 22, 25. Appellant contends that he is entitled to prejudgment interest because, as a shareholder, he was entitled to distributions that DRI withheld. *Id.* at 22.

Moreover, Appellant claims, prejudgment interest could easily be applied to the amounts the Master calculated that Appellant was entitled to receive each year. *Id.* at 22–23. Relying on common-law principles of contracts and liquidated damages, Appellant submits that Pennsylvania's appellate courts "have the inherent authority to correct the error of not awarding prejudgment interest." *Id.* at 23–24 (citing *Fernandez v. Levin*, 548 A.2d 1191 (Pa. 1988)). Furthermore, Appellant asserts that "the right to interest begins at the time payment is withheld after it has been the duty of the debtor to make such payment." *Id.* (quoting *Palmgreen v. Palmer's Garage, Inc.*, 117 A.2d 721 (Pa. 1955)).

Alternatively, Appellant contends that this is a breach-of-fiduciary-duty case that warrants the imposition of prejudgment interest. Appellant's Brief at 24. According to Appellant, Dr. Shah breached a fiduciary duty to minority shareholder Appellant by failing to pay Appellant's pro-rated share of profits; therefore, Appellant claims entitlement to prejudgment interest. *Id.* at 24–25 (citing *Sack v. Feinman*, 413 A.2d 1059 (Pa. 1980), and *Bailey v. Jacobs*, 189 A. 320 (Pa. 1936)). By not awarding prejudgment interest, Appellant asserts, the trial court unjustly enriched Dr. Shah and denied Appellant full restitution. *Id.* at 25.

The trial court rejected Appellant's arguments in its opinion addressing Defendants' motion to strike:

> [Appellant] asserts the Master failed to calculate or award interest on [Appellant's] share of the profits earned from DRI

. . . . The [c]ourt would first note that, per the Stipulated Order entered by the [c]ourt, the Master was not charged with the task of calculating any interest.... This is a fact [that] is acknowledged by both [Appellant] and Defendants.

The [c]ourt contends that it is improper for [Appellant] to take issue with the Master on [this] issue because the Master was never charged with the task[ Appellant] is now requesting. The Master's duties were carefully delineated in the [c]ourt's Order of March 22, 2012. This was an Order judiciously negotiated between the parties and entered by the [c]ourt at counsels' behest and with their express consent. [Appellant] cannot now come before the [c]ourt and demand [a] certain responsibilit[y] be placed upon the Master when [it is] completely outside the scope of the Stipulated Order. As [this] objection[] is beyond the specific boundaries of the matters for which the Master was charged to make a determination, the [c]ourt believes that [Appellant's] objection[] in this regard should be dismissed as improper. In short, if [Appellant] wanted [interest] calculated, [he] should have bargained for, and included [it] in, the Stipulated Order.

Trial Court Opinion, 7/29/14, at 3.

"Our courts have generally regarded the award of prejudgment interest as not only a legal right, but also as an equitable remedy awarded to an injured party at the discretion of the trial court." *Kaiser v. Old Republic Ins. Co.*, 741 A.2d 748, 755 (Pa. Super. 1999). "Whether a party is entitled to prejudgment interest is left to the sound discretion of the trial court in equity." *Osborne v. Carmichaels Min. Mach. Repair, Inc.*, 628 A.2d 874, 879 (Pa. Super. 1993) (citing *Gurenlian v. Gurenlian*, 595 A.2d 145 (1991)). A court of equity is not limited to the statutory rate of interest, but may make an award above it. *Gurenlian*, 595 A.2d at 148.

Upon review of the record, we agree with the trial court that an award of prejudgment interest was not within the scope of the Master's review. The Master's review was limited to judiciously negotiated and narrowly tailored financial issues. *See* Order, 3/22/12 (defining scope of the Master's review). Appellant acknowledges that "the governing STIPULATED ORDER was silent as to whether interest should or should not be included." Appellant's Brief at 22 (emphasis in original); *see also* N.T., 11/14/14, at 43 (stipulation that the Master "did not opine on [interest] or include it in his report because he was not asked to [do so] as part of the order charging him with his assignment."). Therefore, Appellant has no basis for objecting to the Master's lack of a recommendation regarding prejudgment interest. Accordingly, we have no basis on which to disturb the trial court's decision.

Lastly, Appellant claims that the trial court erred by dismissing the issue of punitive damages. Appellant's Brief at 26. Appellant argues that he is entitled to punitive damages because the majority shareholders willfully withheld compensation. *Id.* at 26–28.

Again, in ruling on Defendants' motion to strike, the trial court opined that a determination of punitive damages was not before the Master:

> [Appellant] argues that the Master should have awarded punitive damages in this case due to the conduct of Defendants. The [c]ourt would first note that, per the Stipulated Order entered by the [c]ourt, the Master was not charged with the task of . . . making any determination in regard to punitive damages. This is a fact [that] is acknowledged by both [Appellant] and Defendants.

The [c]ourt contends that it is improper for [Appellant] to take issue with the Master on [this] issue because the Master was never charged with the task[ Appellant] is now requesting. The Master's duties were carefully delineated in the [c]ourt's Order of March 22, 2012. This was an Order judiciously negotiated between the parties and entered by the [c]ourt at counsels' behest and with their express consent. [Appellant] cannot now come before the [c]ourt and demand [a] certain responsibilit[y] be placed upon the Master when [it is] completely outside the scope of the Stipulated Order. As [this] objection[] is beyond the specific boundaries of the matters for which the Master was charged to make a determination, the [c]ourt believes that [Appellant's] objection[] in this regard should be dismissed as improper. In short, if [Appellant] wanted [punitive damages] calculated, [he] should have bargained for, and included [them] in, the Stipulated Order.

Trial Court Opinion, 7/29/14, at 3.

The standard governing the award of punitive damages is well settled

in Pennsylvania:

Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct. The purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others like him from similar conduct. Additionally, this Court has stressed that, when assessing the propriety of the imposition of punitive damages, the state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious.

*Sokolsky v. Eidelman*, 93 A.3d 858, 871 (Pa. Super. 2014) (quoting

*Hutchison v. Luddy*, 870 A.2d 766, 770–771 (Pa. 2005) (citations,

footnote, and internal quotation marks omitted)).

Upon review of the record, we agree with the trial court that an award of punitive damages was not within the scope of the Master's review. Therefore, Appellant has no basis for objecting to the Master's recommendation, and we have no basis upon which to disturb the trial court's decision.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/31/2016