# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Golf Ridge Homeowners'       :
Association                       :
                                     :
            v.                     :    No. 804 C.D. 2020
                                     :    Submitted: January 28, 2022
Alice V. Gray, James Revell     :
                                     :
Appeal of: Marshall L. Williams   :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE STACY WALLACE, Judge

**OPINION NOT REPORTED**

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER     FILED: January 3, 2023

Marshall L. Williams (Intervenor), pro se,[1] appeals from the September 4, 2019 Order of the Court of Common Pleas of Montgomery County (trial court), that denied a Petition to Set Aside a Sheriff's Sale (Petition), as well as an August 20, 2019 Order that dismissed certain exceptions (Exceptions) to the distribution of Sheriff's Sale proceeds but stayed the distribution of the proceeds pending the resolution of the Petition,[2] both filed by Intervenor as a "party of interest" and "power of attorney" of 100 St. Andrews Blvd., Limerick, PA 19468 (Property). Prior to being sold at Sheriff's Sale, the Property was owned by Alice V. Gray and

---

[1] Intervenor is an attorney whose license to practice law was suspended by the Supreme Court of Pennsylvania on February 12, 2015, and remains suspended.

[2] The August 20, 2019 and September 4, 2019 Orders were entered by different judges, but the Honorable Gail A. Weilheimer issued an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a), addressing both orders.

James Revell as tenants in common.[3] Golf Ridge Homeowners' Association (the Association) purchased the Property at the Sheriff's Sale. Intervenor, who represented Ms. Gray until his law license was suspended in February 2015, holds a mortgage on Ms. Gray's interest of the Property that was recorded on April 22, 2015. On appeal, Intervenor asserts numerous arguments as to how the trial court erred or abused its discretion in not setting aside the Sheriff's Sale, and in upholding certain distributions of the Sale proceeds. Upon careful review, we affirm.[4]

## I. BACKGROUND

### A. *The Association and its Underlying Judgment.*

The Association, a non-profit corporation, serves the residents of the Golf Ridge Community (Community), in which the Property is located. The Property is subject to the Community's Declaration of Covenants, Easements, Conditions and Restrictions (Declaration), which authorizes the Association to impose assessments on all Community homeowners. Ms. Gray and Mr. Revell jointly own the Property, a single-family residence, which they purchased on July 31, 2000. Mr. Revell resided at the Property since that date, but has since vacated the Property. Ms. Gray resided there between December 2000 and November 2001. Mr. Revell paid the

---

[3] By orders dated October 14, 2021, and January 27, 2022, this Court precluded, respectively, Ms. Gray and Mr. Revell from participating in this appeal based on their failure to timely file briefs. To the extent Intervenor's brief lists Ms. Gray as an appellant due to her "contributing to the development of the brief," (*see* Application for Extension of Time to File Brief ¶ 3, December 1, 2020), Ms. Gray is not an appellant, having not filed an appeal from the trial court's Order.

[4] Also before the Court is the Association's Application to Expedite Appeal and Ms. Gray's Answer opposing said application and request for equitable relief to be entered in her favor. Given the Court's disposition of this appeal, the Association's Application to Expedite is dismissed as moot. Further, to the extent Ms. Gray seeks the reversal of the trial court's Order and equitable relief, and sets forth arguments as to the merits of underlying appeal, because Ms. Gray has been precluded from making such arguments, the Court cannot consider them.

mortgage, property taxes, and Association's fees between 2000 to 2002, after which Ms. Gray paid the mortgage and property taxes.

In October 2011, the Association filed a Complaint against Ms. Gray and Mr. Revell to collect, pursuant to the Declaration, unpaid assessments, late charges, court costs, and attorney's fees for the period of October 1, 2008, through September 20, 2011. At the time of the Complaint's filing, the charges amounted to $9,852.79 plus interest from October 24, 2011, attorney's fees through date of judgment, and costs of suit. Mr. Revell filed a pro se answer with new matter and a counterclaim. Ms. Gray, acting through Intervenor, filed an answer and new matter, asserting affirmative defenses and a counterclaim against the Association. Intervenor also filed numerous claims, including breach of implied contract and unjust enrichment, and asserted that Mr. Revell was responsible for paying the Association. The Association filed replies to the new matter and an answer to Ms. Gray's counterclaims.

While the Complaint was pending, Intervenor was suspended from the practice of law on February 12, 2015. Intervenor thereafter recorded a mortgage for $52,300.00 against Ms. Gray's interest in the Property on April 22, 2015. After the trial court issued a notice to terminate the Complaint for lack of activity, the Association timely proceeded on the Complaint to arbitration, where an award in the amount of $14,581.00 was entered in the Association's favor on November 14, 2016. Upon praecipe filed by the Association's counsel, the trial court entered the award as a judgment on December 28, 2016. Although Ms. Gray filed a pro se motion to strike the judgment, the motion was dismissed based on Ms. Gray's nonappearance at the scheduled argument.

*B. The Sheriff's Sale and Intervenor's Filings.*

The Association sought payment of the judgment from Ms. Gray and Mr. Revell, but after allowing them two years to sell the Property to no avail, the Association filed a praecipe for writ of execution – money judgment, seeking a Sheriff's Sale of the Property on January 8, 2019. The Association had difficulty serving the notice of the Sheriff's Sale on both Ms. Gray and Mr. Revell, so it sought, and received, approval from the trial court for alternative service. Following the alternative service on Intervenor, as Ms. Gray's "power of attorney," and Ms. Gray by ordinary mail, and the proper publication of the Sheriff's Sale, the Property was listed for Sale on April 24, 2019. The Sale was continued to May 29, 2019. Intervenor filed an Emergency Motion to Stay the Sale and a Motion to Strike the Writ of Execution on May 28, 2019. After oral argument, the trial court denied the motion. The Sheriff's Sale proceeded, and the Property was sold for $60,000.00 to an attorney representing the Association as the high bidder.

A proposed distribution of the Sheriff's Sale's proceeds was filed, which would distribute $12,084.81 to Intervenor for his 2015 mortgage. Intervenor, claiming to be the power of attorney for the Property and a party of interest, filed the Exceptions and the Petition. In the Petition, Intervenor asserted that the trial court had not authorized the Sale and the parties' substantive and procedural due process rights were violated based on inadequate notice, defective writs of execution, and insufficient service of process. A hearing on the Exceptions was held at which Mr. Revell appeared pro se, Intervenor appeared pro se as a lienholder and as Ms. Gray's "power of attorney," and Ms. Gray did not appear and was not legally represented

4

by counsel.[5]  (Supplemental Reproduced Record (S.R.R.) at 317b, 329b-30b, 334b-37b.)  The trial court would not allow Intervenor to represent Ms. Gray as her power of attorney.  (*Id.* at 335b-37b, 353b-54b.)

### C. The Trial Court's Orders Denying Intervenor Relief.

On August 20, 2019, the trial court issued a memorandum and order granting the Exceptions in part, increasing the distribution to Intervenor by $867.67 as the next lienholder in priority against Ms. Gray's interest, and dismissing Intervenor's other Exceptions.  The $60,000.00 bid would remain deposited with the Sheriff until the Petition was resolved.  Intervenor filed a Motion for Reconsideration, which was denied.  The trial court subsequently dismissed Intervenor's Petition on September 4, 2019, based on its review of the Petition, the Association's answer, and its review of the record.  The trial court noted that Intervenor had not filed a petition to intervene in the matter and further directed Intervenor not to act as Ms. Gray's counsel because his role of power of attorney did not overcome the prohibition against the unlicensed practice of law.  Intervenor appealed the denial of the Petition.[6]

On September 19, 2019, Intervenor filed an official Petition to Intervene, requesting a stay on the issuance of the Sheriff's deed and on any distribution of the Sale proceeds pending the disposition of his intervention petition.  Intervenor asserted that his mortgage had higher priority than any of the money judgments or

---

[5] It was during this hearing that the suspension of Intervenor's law license came to light, with Intervenor first representing that he was a licensed lawyer in Pennsylvania, indicating that he was **not** representing Ms. Gray as her attorney, and later acknowledging that he was not an attorney in good standing.  (Supplemental Reproduced Record (S.R.R.) 329b-31b, 337b-41b, 350b-51b.)  Upon the trial court's subsequent review, it was determined that Intervenor's license had been suspended in February 2015.  (*Id.* at 351b-53b.)

[6] Intervenor filed the appeal of the Petition with the Superior Court, which transferred the matter to this Court on August 18, 2020.

liens, including the Association's liens, which was not reflected in the Sheriff's proposed distribution. The Association filed an answer to the Petition to Intervene and Stay the Proceedings, opposing entry of the stay. Intervenor responded that there was an automatic stay in place due to his appeal.

The trial court disagreed with Intervenor, issuing an order on November 1, 2019, indicating there was no automatic stay as no application had been filed. The trial court granted Intervenor intervention, but reiterated that Intervenor was not a defendant and could not act as Ms. Gray's attorney if his power of attorney was for the Property and he was not a licensed attorney. Thereafter, Intervenor perfected an application for stay in November 2019, which the Association opposed and requested, as new matter, that a security deposit be submitted pending resolution of the appeal. On December 4, 2019, the trial court denied the request for a security deposit, ordered the Sheriff to continue to hold the $60,000.00 bid until resolution of the appeal, and allowed the Association to rent the Property month-to-month pending resolution of the appeal.

*D. Intervenor's Concise Statement and the Trial Court's Responsive Opinion.*

Intervenor filed a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b), asserting 13 allegations of error. Relevantly, Intervenor alleged that service on Ms. Gray was not proper because Intervenor was not authorized to accept service for Ms. Gray, Intervenor was not served at the correct address, and no certificate of mailing was filed; the trial court erred in concluding that other liens and adverse money judgments had priority over Intervenor's mortgage or could be paid from the Sheriff's Sale proceeds; and the trial court abused its discretion or erred in not granting all of Intervenor's Exceptions.

6

The trial court issued its responsive opinion, addressing Intervenor's allegations of error. Noting that the party seeking to set aside a sheriff's sale bears the burden of proving circumstances that warrant that relief, that such petition may be denied for insufficient proof, and that the decision to grant that relief was within a trial court's discretion, the trial court explained that there was no abuse of discretion in denying the Petition because there was insufficient evidence to support the Petition's allegations. (Trial Court 1925(a) Opinion (1925(a) Op.) at 8-9.) According to the trial court, in the Petition, Intervenor purported to raise arguments as the power of attorney for the Property of Ms. Gray, but "none of the arguments were brought independently by Ms. Gray." (*Id.* at 9.) This led the trial court to observe that Intervenor, whose license to practice law in Pennsylvania was suspended, could not file pleadings or other legal paperwork on behalf of another in court and such papers would have no legal effect. (*Id.* at 9-10 (citing *Wachovia Mortgage, FSB v. Estate of Battistini* (Pa. Super., No. 1739 EDA 2013, filed Feb. 25, 2014), 2014 WL 10980089, at *2).) While the power of attorney may have permitted Intervenor to pursue litigation on Ms. Gray's behalf, it did not, the trial court reasoned, allow Intervenor to litigate the claim on her behalf, as that would be the practice of law. The trial court then pointed to averments within the Petition in which Intervenor presented Ms. Gray's beliefs, arguments, and positions as examples of Intervenor representing Ms. Gray and engaging in the impermissible practice of law. As the arguments were made by an unauthorized, unlicensed layperson, the dismissal of those arguments on that basis was not an abuse of discretion or an error of law.

The trial court then rejected the claim that there were defects in service as being unsupported by the record. In so concluding, the trial court pointed to the Association's filing of a correct affidavit of service of the praecipe for the writ of

7

execution pursuant to Pennsylvania Civil Rule of Procedure 3129.1, Pa.R.Civ.P. 3129.1, showing that the writ was filed upon Ms. "Gray c/o Marshall Williams, 1201 Sa[n]so[m] Street, Second Floor, Philadelphia, PA 19107." (1925(a) Op. at 11.) Further, on February 25, 2019, the Association's attorney filed an Affidavit/Return of Service under Rule 3129.2, Pa.R.Civ.P. 3129.2, reflecting that all interested parties were served and the notice of the Sheriff's Sale was published in the Times Herald. The challenge to service set forth in the Petition was that Intervenor's correct address was the **Third** Floor of 1201 Sansom Street, but the trial court rejected this claim as not credible and disingenuous because Intervenor's own cover letter to the 1925(b) Statement used Second Floor. Thus, the trial court contended there was no abuse of discretion or error of law in its denying the Petition on this basis.

The trial court then considered Intervenor's challenges to giving priority to the Association's liens, based on the non-payment of assessments, over Intervenor's mortgage. The trial court explained that under the Uniform Planned Community Act (UPCA),[7] the Association was authorized to impose assessments, charges based on the late payments, fees or assessments, and a lien for late assessments, which could be foreclosed upon in a manner like a mortgage on real estate. Sections 5302(a)(2), (11) and (12) and 5315(a) of the UPCA, 68 Pa.C.S. §§ 5302(a)(2), (11)-(12), 5315(a). The trial court further observed that, per Section 5315(b)(1)(i), this lien "is prior to all other liens and encumbrances on a unit except: (i) liens and encumbrances recorded before the recording of the declaration," as recording of the declaration constitutes notice and perfection of the lien. (1925(a) Op. at 12-13 (emphasis omitted).) In addition, an assessment-related lien or encumbrance imposed on a unit takes priority over deeds of trust or mortgages unless the deed of

---

[7] 68 Pa.C.S. §§ 5101-5414.

8

trust or mortgage was recorded prior to the due date of the assessment. (*Id.* at 13.) Because Intervenor's mortgage was not recorded until April 22, 2015, after the due date of the 2005, 2006, and 2011 assessments at issue, the Association's liens against the Property based on those unpaid assessments took priority.

The trial court further explained there was no error in its denying Intervenor's Exceptions because the Association's liens took priority over his mortgage based on the UPCA's plain language. The trial court pointed out that it granted Intervenor relief on the lien on the judgment related to the 2006 assessments, as that lien had expired, thereby increasing Intervenor's portion of the distribution by $867.67, which represented Ms. Gray's half of the $1,735.34 assessment. The trial court rejected Intervenor's challenge to the distribution of $6,845.16 to Mr. Revell, noting that Intervenor's mortgage was recorded only against Ms. Gray's one-half interest in the Property. As to Intervenor's objection to the Association receiving $8,507.50 from the proceedings based on its money judgment deriving from the 2005 assessments, the trial court reasoned that the 2009 judgment was properly revived in 2014, and the revived judgment took priority over Intervenor's subsequently recorded mortgage. With respect to the assertion that the distribution of $12,634.81 to the Association based on its 2011 claim was erroneous because it did not account for the payments Ms. Gray had made against that judgment, the trial court held that the Association had presented credible evidence that the writ of execution amount was originally $16,183.00, which was reduced to $12,634.81 to reflect Ms. Gray's payments.

## II. DISCUSSION

On appeal,[8] Intervenor raises eight issues for this Court to review.[9] At the outset, the Court observes that, to the extent Intervenor asserts arguments on Ms. Gray's behalf as an "appellant," Ms. Gray is not an appellant per a February 12, 2021 order of this Court. In that order, we denied Intervenor's attempt to join Ms. Gray as an appellant, noting Ms. Gray had not filed the Notice of Appeal from the trial court's September 4, 2019 Order, and had not participated in the appeal by filing a separate appellee's brief in support of Intervenor's appeal. Further, both Ms. Gray and Mr. Revell have been precluded from filing briefs in this matter. We now turn to the issues before the Court, beginning with those related to the denial of the Petition.

### A. Whether the Trial Court Erred in Denying the Petition.

Intervenor filed the Petition seeking to set aside the Sheriff's Sale of the Property, which was the result of the outstanding judgment against Ms. Gray and Mr. Revell arising out of the nonpayment of their assessments under the UPCA. Pursuant to Section 5315(a) of the UPCA, an "association has a lien on any unit for any assessment levied against that unit . . . from the time the assessment . . . becomes due," and this "lien may be foreclosed in a like manner as a mortgage on real estate." 68 Pa.C.S. § 5315(a). "The purpose of a sheriff's sale in mortgage foreclosure proceedings is to realize out of the land, the debt, interest, and costs which are due,

---

[8] On October 8, 2020, this Court directed the parties "to address the appropriateness of [Intervenor's] appeal of the September 4, 2019 order . . . in their principal briefs on the merits or by other appropriate motion." *Golf Ridge Homeowners' Association v. Gray* (Pa. Cmwlth., No. 804 C.D. 2020, filed Oct. 8, 2020). Thereafter, the Association filed a Motion to Quash asserting Intervenor lacked standing, which was denied by a Memorandum and Order dated November 16, 2020. Having denied the Motion to Quash based on Intervenor's alleged lack of standing to appeal, the Court will not address Intervenor's standing further.

[9] We have rearranged Intervenor's arguments for ease of discussion.

10

or have accrued to, the judgment creditor." *GMAC Mortg. Corp. of Pa. v. Buchanan*, 929 A.2d 1164, 1167 (Pa. Super. 2007).[10] Such petitions are "grounded in equitable principles and [are] addressed to the sound discretion of the hearing court." *Id.* "The burden of proving circumstances warranting the exercise of the court's equitable powers rests on the petitioner, as does the burden of showing inadequate notice resulting in prejudice, which is on the person who seeks to set aside the sale." *Id.* In reviewing a trial court's ruling on a petition to set aside a sheriff's sale, the appellate court "recognize[s] that the court's ruling is a discretionary one, and it will not be reversed on appeal unless there is a clear abuse of that discretion." *Id.* "An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *Harman v. Borah*, 756 A.2d 1116, 1123 (Pa. 2000). "Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion." *Id.*

Intervenor first argues that the trial court's denial of the Petition should be reversed because the Association failed to properly serve the writ of execution. Intervenor maintains that service was not properly effectuated because he was not properly served at his "correct" address. Intervenor also asserts that Ms. Gray, whose notice was mailed to Intervenor, was not properly served because Intervenor was not authorized to accept service on her behalf. Further, Intervenor asserts the Association has not produced a certificate of mailing reflecting proper service on either Ms. Gray or Mr. Revell. Upon our review, we discern no error in the trial court's conclusion that service was not defective.

---

[10] Although decisions of the Superior Court are not binding, "they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

Service of the written notice of a sheriff's sale is governed by Pennsylvania Rule of Civil Procedure 3129.2(c), subsection (1)(iii) of which provides:

> The written notice shall be prepared by the plaintiff, shall contain the same information as the handbills or may consist of the handbill and shall be served at least thirty days before the sale on all persons whose names and addresses are set forth in the affidavit required by [Pennsylvania] Rule [of Civil Procedure] 3129.1[, Pa.R.Civ.P. 3129.1, (Rule 3129.1)].
>
> (1) Service of the notice shall be made
> . . . .
> (iii) upon each other person named in the affidavit by the plaintiff by ordinary mail at the address set forth in the affidavit with the return address of the plaintiff appearing thereon. The plaintiff shall obtain from the U.S. Postal Service a Form 3817 Certificate of Mailing. Service shall be complete upon mailing. If the mail is returned the validity of the service shall not be impaired and the sale shall proceed at the time fixed in the notice.

Pa.R.Civ.P. 3129.2(c)(1)(iii). In his brief, Intervenor asserts that his "correct" address as mortgagee was 1201 Sansom Street, Second Floor, Philadelphia, Pa. 19107, and as Marshall L. Williams, Esquire at 1201 Sansom Street, Third Floor, Philadelphia, Pa. 19107. Intervenor claims that while "Marshall L. Williams" is the interested party, "Marshall L. Williams, Esquire" is not, and service on the latter is insufficient to establish service on the former. He further asserts that the Association knew that he was not Ms. Gray's agent and, therefore, service on her through him was defective.

Intervenor's complaints of lack of service, lack of notice, and prejudice are not supported by the record. The record shows, pursuant to a special order granted by the trial court, notice of the initial, April 24, 2019 Sheriff's Sale was to be effectuated as to: Mr. Revell by publication, by certified mail to the Property and, if returned, by ordinary mail sent to the Property; and Ms. Gray by ordinary mail

12

sent to "Alice Gray c/o Power of Attorney, Agent Marshall L. Williams, 1201 Sansom Street, Second Floor, Philadelphia, PA 19107," and to two addresses for Ms. Gray in Saint Louis, Missouri. (S.R.R. at 46b-47b.) The Rule 3129.1 affidavit filed by the Association listed the following addresses twice for the writ of execution, once as owner of the Property and once as the defendant in the judgment: "Ms. Alice Gray c/o Mr. Marshall Williams, 1201 Sansom Street, 2nd Floor, Phila., Pa. 19107," and "James Revell, [the Property's address]." (*Id.* at 48b.) The affidavit twice listed "Marshall L. Williams Esq[.,] 1201 Sansom Street, Philadelphia, PA 19107[,]" which is the address listed on the first page of the mortgage, in the names and addresses of record lienholders.[11] (*Id.* at 50b, 145b, 147b.) Notably, the mortgage lists "Marshall L. Williams, Esquire," not "Marshall L. Williams," as the mortgagee, which contradicts Intervenor's arguments to this Court. (*Id.* at 147b.) The return of service under Rule 3129.1 reflected that service was made in accordance with the special order and the Rule 3129.1 affidavit. (*Id.* at 51b-52b.) Attached to the return of service were a certified mail receipt signed by Mr. Revell and several USPS Form 3817, Certificates of Mailing reflecting the above-referenced service on Ms. Gray and Intervenor. (*Id.* at 53b-56b.)

Additionally, Intervenor had actual notice of the April 24, 2019 Sheriff's Sale, and the subsequent May 29, 2019 Sheriff's Sale. Intervenor exchanged emails with the Association's counsel leading up to the April 24, 2019 Sheriff's Sale, and, ultimately, obtained the Association's agreement to continue the Sale to the next month. (*Id.* at 137b-40b.) Intervenor later filed a petition to stay the May 29, 2019 Sale, participated in a hearing on that petition, and, when the stay was denied,

---

[11] The second page of the mortgage recording reflects addresses for "Marshall L. Williams, Esq[.]" at both the "2nd" and "3rd" Floors of 1201 Sansom Street, but the first page of the actual mortgage instrument provides only 1201 Sansom Street as "Marshall L. Williams, Esquire['s]" address. (S.R.R. at 146b-47b.)

13

actively bid on the Property at the Sale. Although Intervenor challenges the service on Ms. Gray, the address used by the Association, i.e., Intervenor's 1201 Sansom Street, 2nd Floor address, was the one Ms. Gray designated for service on her petition to open the underlying judgment. (*Id.* at 19b-23b.) Further, Ms. Gray had actual notice of the Sheriff's Sale of the Property because she signed the verification for the petition to stay, filed the day before the May 29, 2019 Sheriff's Sale. (*Id.* at 93b.) On this record, we cannot say that the trial court erred in concluding that Intervenor failed to meet his burden of proving that service was not properly effectuated so as to warrant the setting aside of the Sheriff's Sale.[12]

## B. *Whether the Trial Court Erred in Dismissing Some of the Exceptions.*

Intervenor argues the trial court erred in concluding that his mortgage on the Property did not take priority over the Association's liens and adverse money judgments in the distribution of the Sheriff's Sale proceeds. In addition to arguing that all mortgages take priority over adverse money judgments under Section 8141(2) of the Judicial Code, 42 Pa.C.S. § 8141(2),[13] Intervenor asserts that the Association's judgments are either void or have lost their priority. He further argues that Ms. Gray did not receive appropriate credit for payments made towards one of the judgments and others should not receive any of the proceeds from the Sheriff's

---

[12] Intervenor further argues that the trial court erred in denying the Petition simply because the trial court believed Intervenor was representing Ms. Gray as her attorney. Having concluded that there was no error in denying the Petition because the notice requirements were satisfied and there was actual knowledge of the Sheriff's Sale prior to its commencement, we will not address this argument.

[13] Although the text of Intervenor's brief cites to Section 8142(1), Intervenor quotes Section 8141 of the Judicial Code, and emphasizes subsection (2) of that provision, which references "Other mortgages and defeasible deeds in the nature of mortgages, from the time they are left for record," in the associated footnote to support his claim. (Intervenor's Br. at 18-19 & n.4.)

Sale. Reviewing the trial court's decision rejecting Intervenor's arguments, we discern no error or abuse of discretion.

Under Section 5315(a) of the UPCA, homeowners' associations are authorized to impose liens for unpaid assessments and those liens can be foreclosed upon like a mortgage on real estate. 68 Pa.C.S. § 5315(a). With regard to the priority of these liens, Section 5315(b)(1) provides:

> **(b) Priority of lien. –**
>
> > **(1) General Rule.--**A *lien* under this section *is prior to all other liens and encumbrances* on a unit except:
> >
> > > (i)  *Liens and encumbrances recorded before the recording of the declaration.*
> > >
> > > (ii)  (A) *Mortgages* and deeds of trust on the unit securing *first mortgage holders* and *recorded before due date of the assessment* if the assessment is not payable in installments or the due date of the unpaid installment if the assessment is payable in installments.
> > >
> > > (B) Judgments obtained for obligations secured by any such mortgage or deed of trust under clause (A).
> > >
> > > (iii)  Liens for real estate taxes and other governmental assessments or charges against the unit.

68 Pa.C.S. § 5315(b)(1) (italicized emphasis added). The recording of the Declaration constitutes notice and perfection of any lien issued thereunder. 68 Pa.C.S. § 5315(d). Intervenor's mortgage, recorded on April 22, 2015, was not "recorded before [the] due date of [any of] the assessment[s]" at issue here. 68 Pa.C.S. § 5315(b)(1)(ii). Therefore, to the extent Intervenor asserts that his

15

mortgage has priority over any lien based on unpaid assessments, the liens take priority under Section 5315 of the UPCA.

As for the Association's judgments, Intervenor points to Section 8141(2) of the Judicial Code to argue his mortgage takes priority over those judgments. Pennsylvania is a race-notice recording system, whereby the "proper recording of an interest or lien is necessary for priority as to all except those with actual notice of the prior lien." *In re 250 Bell Rd., Lower Merion Twp., Montgomery Cnty.*, 388 A.2d 297, 301 (Pa. 1978). Section 8141(1)-(4) provides:

> Liens against real property shall have priority over each other on the following basis:
>
> (1) Purchase money mortgages . . . .
>
> (2) Other mortgages . . . from the time they are left for record.
>
> (3) Verdicts for a specific sum of money, from the time they are recorded by the court.
>
> (4) Adverse judgments and other orders, from the time they are rendered.
>
> . . . .

42 Pa.C.S. § 8141(1)-(4). Section 4303(a) of the Judicial Code states that "[a]ny judgment or other order of a court of common pleas for the payment of money shall be a lien upon real property on the conditions, to the extent and with the priority provided by statute . . . when it is entered of record." 42 Pa.C.S. § 4303(a).[14] "A judgment lien becomes dormant after five years." *Mid-State Bank & Trust Co. v.*

---

[14] A judgment lien "constitutes a liquidated claim," secures an underlying debt, and "prevents a debtor from encumbering or conveying any property he might own in such a way as to divest the effect of the judgment, while also preventing later lienholders from satisfying their debt without first paying the earlier lien." *In re Upset Sale, Tax Claim Bureau of Berks Cnty.*, 479 A.2d 940, 943-44 (Pa. 1984).

16

*Globalnet Int'l, Inc.*, 710 A.2d 1187, 1193 (Pa. Super. 1998). A "judgment lien may nonetheless be revived after the five-year statute of limitations period for revival, however its priority against intervening liens, if any, is lost." *Shearer v. Naftzinger*, 747 A.2d 859, 860 n.1 (Pa. 2000). The priority of liens, other than purchase money mortgages, depends on when they were recorded or entered, in the case of an expired judgment lien, when it was revived, or actual knowledge of the lien.

Intervenor's mortgage is not a purchase money mortgage and, therefore, falls into subsection (2), which provides that other mortgages take priority over other liens **from when the mortgage is recorded**. Intervenor's mortgage was recorded on April 22, 2015. The Association has the following adverse judgments: $8,507.50 entered at 2005-23213 (2005 Judgment) on March 6, 2009; $1,735.34 entered at 2006-25938 (2006 Judgment); and $16,183.00 entered at 2011-27006 on December 28, 2016 (2011 Judgment).

As to the 2006 Judgment, the Association agreed that this judgment had expired and was not revived. Therefore, no distribution was made from the Sheriff's Sale proceeds based on that judgment. The 2005 Judgment was entered against Ms. Gray alone on March 6, 2009, and, on **April 24, 2014**, the Association sought to revive that lien against Ms. Gray. Judgment on the writ of revival occurred on **August 7, 2014**, Ms. Gray's attempt to strike that judgment on the writ of revival was dismissed on **November 12, 2014**, and no appeal of that dismissal was filed. Although the Association revived the 2005 Judgment outside the five-year limitations period, the revival occurred **prior to** Intervenor's **April 22, 2015** mortgage. Thus, there is no error in the trial court's finding that the 2005 Judgment took priority over Intervenor's mortgage.

As to the 2011 Judgment, this judgment was entered on December 26, 2016, which was after the recording of Intervenor's mortgage in April 2015. However,

17

under Section 5315(a) of the UPCA, and the facts here, we discern no error in the trial court's conclusion that the 2011 Judgment took priority over Intervenor's mortgage. Section 5315(a) and (d) indicates that a lien on a unit for unpaid assessments "from the time the assessment . . . becomes due," takes priority against a mortgage unless that mortgage is recorded before the date the assessments are due, and that notice and perfection of this lien occurs with the recording of the Declaration. 68 Pa.C.S. § 5315(a), (d). Further, if a person has "actual notice of the prior lien," the lack of recording will not defeat the priority of that prior lien. *In re 250 Bell Rd.*, 388 A.2d at 301. In addition to the notice that arose from the recording of the Declaration that any unpaid assessments would be a lien that would take priority over a mortgage recorded after the assessments' due dates, 68 Pa.C.S. § 5315(a), (d), Intervenor had actual notice having represented Ms. Gray in the 2011 proceedings, in which the Association sought judgment on that lien. For these reasons, we discern no error in the trial court's conclusion that Intervenor had knowledge that the lien arising out of the 2011 Judgment (and Ms. Gray's non-payment of assessments) would take priority over his 2015 mortgage.

Intervenor also argues, as to the 2011 Judgment, that the distribution of the Sheriff's Sale proceeds was improper because it did not account for payments Ms. Gray made toward her outstanding assessments related to that judgment. However, as the trial court found, the writ of execution amount for this judgment was $16,183.00, inclusive of interest, and the amount proposed to be distributed from the Sheriff's Sale proceeds was only $12,634.81. The Association argued that Ms. Gray did receive such credit, as reflected in the reduction in the proposed distribution amount. The trial court credited this argument, found that Intervenor did not present clear and convincing evidence otherwise, and upheld the proposed distribution. We

18

discern no abuse of discretion in the denial of Intervenor's exceptions and upholding this distribution.[15]

Intervenor further argues that his Exception based on the payment of a judgment against Mr. Revell alone from the Sheriff's Sale proceeds should not have been denied. According to Intervenor, the Sheriff is not authorized to distribute $6,845.16 plus interest, for a total of $7,957.50, to John G. Berg pursuant to a judgment in *John G. Berg, Broker and Agent for Foundation for Eldercare v. James Revell*, Docket No. 2016-24798, because such judgment was a personal judgment against Mr. Revell for unpaid rent at a different property and, was, thus, unrelated to the Property. Because Mr. Revell only holds "technical ownership" of the Property and has no equitable interest therein, distributing part of the Sheriff's Sale proceeds to this judgment would be "grossly unreasonable." (Intervenor's Br. at 22.)

Trial courts hear and determine exceptions to the distribution of the proceeds of a foreclosure sale according to law and equity. *Extraco Mortg. v. Williams*, 805 A.2d 543, 545 (Pa. Super. 2002). "The priority of liens as they appear on record is prima facie evidence of the manner in which the proceeds are to be distributed," unless "the exceptant can produce evidence that he is equitably entitled to priority." *Id.* (internal quotation marks and citation omitted). An appellate court "will reverse only where the trial court was 'palpably erroneous, misapplied the law or committed a manifest abuse of discretion.'" *Id.* (internal quotation marks and citation omitted). If there are apparently reasonable grounds for the decision, the appellate court will affirm it. *Id.*

---

[15] The Court notes that much of this argument in Intervenor's brief is made on behalf of Ms. Gray, which is not permissible because Intervenor cannot represent Ms. Gray due to his law license being suspended and Ms. Gray is not an appellant. In addition, it is unclear how Intervenor is harmed by the proposed distribution related to the 2011 Judgment because the monies to pay that judgment were being taken from Mr. Revell's $30,000, not Ms. Gray's portion of the Sale. (*See* S.R.R. at 288b-89b.)

Reviewing Intervenor's arguments under this standard, we discern no error or misapplication of the law in the trial court's upholding this distribution. As the trial court held, Intervenor's mortgage is only on Ms. Gray's interest of the Property. (Trial Ct. Op. at 14.) This is only one half of the Property, as Ms. Gray and Mr. Revell own the Property as tenants in common. While Intervenor attempts to attack a judgment against Mr. Revell as a means of increasing the portion of the Sheriff's Sale proceeds to which he would be entitled, this dispute is between lienholders against Ms. Gray's interests. Applying equitable principles to this matter, as between the Association and Intervenor, the equities lie in favor of the Association. Because Intervenor is not entitled to any of the proceeds related to Mr. Revell's interest in the Property and the equities favor the Association, we discern no abuse of discretion in the trial court dismissing Intervenor's Exception to the distribution of proceeds in which Intervenor had no interest.

Finally, Intervenor challenges the proposed distribution of $7,302.00 to pay a four-year statutory lien under the UPCA, (*see* S.R.R. at 289b), because the UPCA authorizes such liens only where a complaint in mortgage forfeiture is filed and enforced in accordance with Pennsylvania Rules of Civil Procedure 1141-1150, Pa.R.Civ.P. 1141-1150. Intervenor contends no such complaint was filed and, therefore, no enforceable statutory lien exists. The Association argues that Intervenor did not assert any exception challenging this proposed distribution and, therefore, such challenge is waived.

Reviewing Intervenor's filings, it is apparent that Intervenor did not assert a challenge to this distribution prior to this appeal. Pennsylvania Rule of Civil Procedure 3136(d) provides that "[t]he sheriff shall distribute the proceeds of sale in accordance with the proposed schedule of distribution, **unless written exceptions are filed** with the sheriff not later than ten (10) days after the filing of the proposed

schedule." Pa.R.Civ.P. 3136(d) (emphasis added). Although Intervenor filed written exceptions, he did not include this challenge in his Exceptions. (S.R.R. at 97b-107b.) Nor did Intervenor assert it before the trial court at the hearing on the Exceptions, or in his Statement of Errors Complained of on Appeal. As such, Intervenor has not preserved this issue for appellate review. *See* Pennsylvania Rule of Appellate Procedure 302(a), Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived."); *Commonwealth v. Holtzapfel*, 895 A.2d 1284, 1288, 1289 n.2 (Pa. Cmwlth. 2006) (holding that issues not raised in a 1925(b) statement or raised before the trial court are not preserved for appellate review).[16, 17]

## III.  CONCLUSION

Discerning no error or abuse of discretion by the trial court in denying the Petition or in dismissing, in part, Intervenor's Exceptions, we affirm.

_____

**RENÉE COHN JUBELIER,** President Judge

---

[16] Intervenor also asserts that he did not have an opportunity to be heard at the July 17, 2019 hearing on the Exceptions. Our review of the record reflects otherwise. Intervenor presented his position regarding his Exceptions to the trial court and, when asked by the trial court if there was anything else he wanted to present, Intervenor indicated that he "would rely on [his] briefs." (S.R.R. at 358b-59b.) Notwithstanding that statement and an order directing the parties to file post-hearing briefs on or before August 8, 2019, (*id.* at 110b, 363b-64b), Intervenor did not timely file a post-hearing brief for the trial court's consideration. Accordingly, we discern no evidence that Intervenor was prevented of presenting his claims to the trial court.

[17] As for the last argument in Intervenor's brief, asserting that equity requires that Mr. Revell's portion of the Sheriff's Sale proceeds be paid to Ms. Gray due to other trial court orders in matters unrelated to the Sheriff's Sale of the Property, that referenced dispute is between Ms. Gray and Mr. Revell and should be resolved outside the current matter, which is limited to the Sheriff's Sale of the Property and whether the trial court erred in denying the Petition and not granting all of Intervenor's Exceptions.

21

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Golf Ridge Homeowners'
Association

        v.

Alice V. Gray, James Revell

Appeal of: Marshall L. Williams

:
:
:
:
:   No. 804 C.D. 2020
:
:
:
:

# O R D E R

**NOW**, January 3, 2023, the Order of the Court of Common Pleas of Montgomery County, entered in the above-captioned matter, is **AFFIRMED**. The Application to Expedite filed by Golf Ridge Homeowners' Association is **DISMISSED AS MOOT**, and the Application for Equitable Relief filed by Alice V. Gray is **DENIED** in accordance with the foregoing opinion.

_____
**RENÉE COHN JUBELIRER,** President Judge